**JOHNSON et al. v. RYLANDER.**

No. 4140.

District Court, N. D. California, S. D.

March 20, 1937.

690

Aaron Sapiro, of Los Angeles, Cal., and Milton D. Sapiro, of San Francisco, Cal., for plaintiffs.

H. H. McPike, U. S. Atty., and R. B. McMillan and S. P. Murman, Asst. U. S. Attys., all of San Francisco, Cal., for defendant.

ROCHE, District Judge.

Rylander, United States Shipping Commissioner for San Francisco, refuses to acknowledge and certify shipping articles (see 46 U.S.C.A. § 565) unless the seamen desiring to sign them first produce their "continuous discharge books" authorized by 46 U.S.C.A. § 643. This action is justified by him under a regulation of the Secretary of Commerce to that effect. (See Rules & Regulations for Issuance of the Certificates of Service and Efficiency and of Continuous Discharge Books, promulgated by the Secretary of Commerce December 26, 1936, section 2.)

Plaintiffs, who are seamen, seek in this equitable action to secure a mandatory injunction to force the commissioner to acknowledge and certify the articles regardless of whether they have the books.

### I. Jurisdiction.

Defendant has moved to dismiss the bill because the Secretary of Commerce has not been made a party. If the Secretary must be joined, then it is true the failure to do so requires a dismissal.

The issue thus clearly presented is a difficult one owing to the confusion of the cases. Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L. Ed. 621, Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068, and Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L. Ed. 411, seemingly indicate that the Secretary is a party who must be joined. Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, Berdie v. Kurtz (C.C. A.9) 75 F.(2d) 898, and Yarnell v. Hillsborough Packing Co. (C.C.A.5) 70 F.(2d) 435, would lead to a contrary result. The grounds for the decisions are so vague that no generalizations can be drawn with certainty. See the discussion by Judge Learned Hand in National Conference, etc., v. Goldman (C.C.A.2) 85 F.(2d) 66.

The court will not concern itself with the question of jurisdiction, usually so vital, because it need not be decisive here. The bill must be dismissed upon its merits, and as a practical matter, it makes

little difference whether the dismissal be because of lack of jurisdiction or because no cause of action is stated.

## II. The Merits.

Passing to the merits, plaintiffs' arguments can be considered. They are twofold: First, that the regulation is unauthorized by 46 U.S.C.A. § 643. Second, that even if authorized, it conflicts with the duty imposed upon the commissioner by 46 U.S.C.A. §§ 545, 565, to acknowledge all shipping articles entered into before him, which duty being absolute gives him no discretion to refuse, and so the regulation must fall.

Plaintiffs' first attack has no merit. The Copeland Act (46 U.S.C.A. §§ 643, 660a, 672, 672a, 673, 689, 690, 691, 692, 710a) provides expressly that:

"Every seaman * * * shall be furnished with a book * * * which shall be retained by him. * * * Such book shall be in such form and issued by the shipping commissioners * * * in such manner as the Director of Bureau of Marine Inspection and Navigation, subject to the approval of the Secretary of Commerce, shall determine" (section 643), and, "The Secretary of Commerce shall enforce section[s] 643 * * * through * * * Government officers acting under the direction of the Bureau of Marine Inspection and Navigation, and *shall make such rules and regulations as he may deem necessary* to carry out the provisions of said sections" (section 689).

In conformance with section 689, the Secretary's regulation reads:

"2 (c). Every seaman * * * shall produce a continuous discharge book to the * * * Shipping Commissioner before signing articles of agreement."

The regulation is reasonable. No attack is made on the score that it is not. It incorporates perhaps the only feasible method of securing efficient distribution of the books.

Regulations made by an executive officer, pursuant to a valid statutory delegation of power, have the force and effect of law. Northern Pac. Ry. Co. v. Duluth S. S. Co. (C.C.A.8) 252 F. 544. Both sides concede this proposition. Such regulations, however, if beyond the delegated power, are void. Intercoast Trading Co. v. McLaughlin (D.C.Cal.) 18 F. Supp. 149. The litigants are likewise agreed as to this point. The difference of opinion arises as to whether the present regulation is authorized.

That it is authorized appears beyond serious objection by the words of the statute itself. The Secretary is under a mandatory duty to see to the furnishing and distributing of the books, and under a similar obligation to make such regulations as are necessary and reasonable to accomplish that end. In other words, he must distribute the books by any necessary means, and his regulation does just that. Plaintiffs' theory that as entries are not to be made in the books till the end of a voyage, it cannot be implied that they need be distributed before then, overlooks entirely the portions of the law quoted above and the pertinent regulation made thereunder having the force of law.

The second argument of plaintiffs must also fall because there does not appear to be any conflict either in spirit or letter between 46 U.S.C.A. §§ 565, 689, and regulation 2 (c).

Section 545 provides:

"General duties of a shipping commissioner shall be: * * * Second. To superintend their [seamen's] engagement * * * in manner prescribed by law. * * * Fifth. To perform such other duties relating to merchant seamen or merchant ships as may be required by law."

The second subdivision is elaborated by section 565:

"The following rules shall be observed with respect to agreements [hiring seamen]:

"First. Every agreement * * * shall be signed * * * in the presence of a shipping commissioner. * * *

"Third. Every agreement entered into before a shipping commissioner shall be acknowledged and certified under the hand and official seal of such commissioner."

Regulation 2 (c), supra, merely provides that the seamen must present discharge books before the commissioner can certify the articles.

There is no contention made that any of these provisions are unconstitutional, for indeed, they are not. There is presented merely a question of statutory interpretation. Do these various laws conflict? It is the duty of the court to find, and give effect to if possible, the intent of Congress.

692

With the wisdom of the statutes the court cannot be concerned for that is solely a legislative matter. The Supreme Court said in Takao Ozawa v. U. S., 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199:

"It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail."

But it is not necessary in this case to go to the lengths indicated by the Supreme Court, for the lack of conflict is made apparent by an analysis of the wording of the laws. It will be observed that section 565 regulates the commissioner's conduct only after the articles have been "entered into." It does not in any way profess to show what must be done before the articles can be entered into, and there is nothing in it that prevents the imposition of lawful conditions precedent to executing such agreements. Regulation 2 (c) being a valid exercise of power authorized by statutory delegation (46 U.S. C.A. § 689) has the effect of law (Northern Pac. Ry. Co. v. Duluth S. S. Co., supra) and thus in reality is no more than the imposition of such a lawful condition. After the parties have complied with the condition, the articles can be entered into, and the commissioner must then certify them in strict accordance with section 565.

Stating the case from another point of view, the second subdivision of section 545, supra, imposes a duty on the commissioner through section 565 to certify the articles after execution. The fifth subdivision of section 545, through section 689 and regulation 2 (c), imposes another duty to require the presentation of the books prior to certification of articles. Those two duties are of equal dignity and should both be performed. By refusing to follow one or the other, the commissioner will violate his duty. But as the two can be harmonized, he avoids the dilemma of having to choose between them, by obeying them both.

Furthermore, the discharge books are an integral means toward enforcing other measures in the Copeland Act discussed later in this opinion, such as qualifications and nationality of crews. As these qualifications must be met before a voyage begins, and as the books are the means to that end under the Copeland Act as now enacted, it seems only reasonable that the books must be in the seamen's possession prior to the commencement of the voyages and before the crew is signed. Congress necessarily had this fact in mind when it gave the Secretary such broad powers in devising regulations.

An examination of the intent of Congress should be helpful in disclosing that the laws involved do not conflict in the least degree in spirit, inasmuch as they were designed to remedy different evils and to operate in totally diversified spheres. Section 565, enacted over sixty-four years ago, was meant for the mutual protection of shipowners and seamen, but primarily the latter. Its provisions commanding the commissioner to either read the articles to the crew, or have the crew read them, before signing was intended to make sure that all parties would understand the conditions under which the voyage was to be made, and the wages that were to be paid. The Copeland Act, passed in 1936, serves an entirely different purpose. It is a safety at sea measure coupled with certain provisions that inure to the seamen's benefit. Thus, standards of competency are set for a crew in section 672 (46 U.S.C.A.). Section 672a provides that a definite percentage of a crew must be American citizens. This not only assures that a crew will understand commands given in English, but also reduces the competition American seamen must face from aliens seeking positions in the American merchant marine. The discharge books are intended to provide a sure efficient method for checking the qualifications and nationality of the crews before they are signed. It has another prime purpose—that of serving as a passport for the benefit of seamen entering and leaving this and foreign countries.

Under the act and regulations, the shipping commissioner has no discretion in the issuance of discharge books. It is

his duty to distribute them, and to see that seamen have them before the articles they desire to enter into can be certified by him. He is powerless to halt or suspend the distribution even though he thought the regulation void or unwise. Should he take the law into his own hands and refuse to act further under the act and regulation, he would, of course, be answerable to the proper authorities for breach of his duty.

The court being inclined to the view that the laws and regulation involved are valid and nonconflicting, it will enter an order denying plaintiffs' motion for a temporary injunction, and granting those of defendant seeking to dissolve the restraining order and to dismiss the bill.