### ACRET v. HARWOOD et al.

No. 1717.

District Court, S. D. California, Central Division.

Oct. 25, 1941.

George Acret, of Los Angeles, Cal., for plaintiff.

Wm. Fleet Palmer, U. S. Atty., and James L. Crawford and John Marvin Dean, Asst. U. S. Attys., all of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

On June 28, 1941, the Postmaster General of the United States made a fraud order against W. H. Neher and Private Laboratory of W. H. Neher, and their officers and agents at La Verne, California. George Acret, the plaintiff, is a California attorney at law, representing Neher. On August 4, 1941, he addressed to him two letters at 2510 E. Street, La Verne. Mary D. Briggs, Postmaster of Los Angeles, refused to forward one of the letters, and ordered it returned to Acret as "unmailable". On August 5, 1941, A. E. Harwood, Postmaster of La Verne, stamped the other letter "fraudulent", and ordered it returned to the sender.

In the complaint on file, the plaintiff seeks to vacate the fraud order and to enjoin the postmasters of La Verne and Los Angeles from refusing to deliver his mail to Neher. The fraud order is attacked as unconstitutional, as is also the statute under which it was made, 39 U.S.C.A. § 259.

The defendants have moved to dismiss the complaint for failure to state a claim.

The plaintiff has asked that a three-judge court be convened to hear the matter, under the mandate of Section 380a of Title 28 U.S.C.A.

I am of the view that the motion to dismiss should be granted, and that the request for a three-judge court to hear the matter should be denied. In what follows, I state the grounds for these conclusions.

(1) The Motion to Dismiss.

■ ■ The defendants' motion to dismiss is grounded upon the proposition that no relief can be granted in this case because the fraud order of the Postmaster General, dated June 28, 1941, in obedience to which the mail directed to W. H. Neher is not delivered, cannot be set aside in a proceeding to which the Postmaster General, who is given sole authority by the Congress to make the order, is not before the court. The contention is well grounded. See 28 U.S.C.A. § 112(a). Warner Valley Stock Co. v. Smith, 1897, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621; Gnerich v. Rutter, 1924, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Webster v. Fall, 1925, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Jewel Productions v. Morgenthau, 2 Cir., 1938, 100 F.2d 390; Janes v. Lake Wales Citrus Growers Ass'n, 5 Cir., 1940, 110 F.2d 653; Ernest v. Fleissner, D.C.Wis.1941, 38 F.Supp. 326; Scientific Manufacturing Co. v. Walker, D.C.Pa.1941, 40 F.Supp. 465, and my opinions in Eastman v. United States, D.C., 1939, 28 F.Supp. 807; Redlands Foothill Groves Ass'n v. Jacobs, D.C., 1940, 30 F.Supp. 995. The apparent lack of uniformity in the decisions on the subject is admitted by the Supreme Court in the recent case of Brooks v. DeWar, 1941, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399. And in my two opinions just cited, I endeavored, as other judges have done, to draw a distinction between the cases where the acts of the subaltern may be placed under a court interdict without the presence before the court of his superior officer, and the others wherein the presence of the superior officer is indispensable. I found the power of the court to constrain the subaltern to apply only to cases where the very power of the superior to act is challenged and the act of the subaltern, in endeavoring to execute the order, amounts to a trespass.

■ ▪ Counsel insists that this is the case here. I cannot agree. There is no assertion of absence of statutory authority to enter a fraud order. The procedure is specifically provided for in Section 259, Title 39 U.S.C.A. And the power so conferred is discretionary, like that of other administrative or executive functionaries. Presumption of validity attaches to it. And it can be impugned only when exercised arbitrarily. In other words, abuse of discretion must be shown before a court will interfere. See Bates & Guild Co. v. Payne, 1904, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894; Public Clearing House v. Coyne, 1904, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092; United States v. Chemical Foundation, 1926, 272 U.S. 1, 15, 47 S.Ct. 1, 71 L.Ed. 131; Proctor & Gamble Co. v. Coe, 1938, 68 App.D.C. 246, 96 F.2d 518; National Conference on Legalizing Lotteries v. Farley, 1938, 68 App.D.C. 319, 96 F.2d 861; Farley v. Simmons, 1938, 69 App.D.C. 110, 99 F.2d 343; Farley v. Heininger, 1939, 70 App.D.C. 200, 105 F.2d 79. In this respect, the controlling principles do not differ from those which govern the actions of other executive officers whose decisions are given finality by the Congress, and, in obedience to that authority, by the courts. See my opinion in United States v. Standard Oil Co., D.C.Cal., 1937, 21 F.Supp. 645; United States v. Standard Oil Co., 1937, D.C.Cal., 20 F.Supp. 427. So, the assertion of arbitrariness or error in arriving at the conclusion is not a challenge of the foundation of the authority.

It assails merely the manner of its exercise.

■ A judicial review of the manner of exercise of this authority cannot be had without the presence in court of the executive officer who is given the statutory right to make the particular order. And mere assertion of unconstitutionality is not enough. So the situation here is not that which confronted me in Eastman v. United States, D.C.Wash., 1939, 28 F.Supp. 807, but the one which confronted me in Redlands Foothill Groves v. Jacobs, 1940, D.C. Cal., 30 F.Supp. 995.

For the court to interfere with the carrying into effect of the order of a cabinet officer, made under statutory power, in a district where the officer does not reside would introduce chaos into our governmental system. For, let us imagine a concern, the business of which extends to a large number of localities, scattered all over the United States. We would then have the spectacle of district courts all over the country interfering with the act of a cabinet officer and compelling him to appear in districts other than that which by the Congress is declared to be his official residence, "at the seat of government," 5 U.S.C.A. § 361, to defend himself.

Compared with this inconvenience, the inconvenience of the person or the institution against whom a fraud order is made, after a hearing, in going to the District of Columbia, the official residence of the Postmaster General, and seeking relief, is the lesser of the two. Certainly, in this day of easy transportation, it is not a great hardship on a litigant, who seeks to impugn the validity of the order of a cabinet officer, made under explicit statutory authority, to go to the district of the Cabinet Officer's official residence for judicial redress. The post office establishment is one of our oldest. Its ramifications are, perhaps, greater than that of any other executive department.

In view of the great variety of complicated problems with which the head of the department is confronted, there is good reason for insisting, as the Congress has done, that whoever seeks redress against his acts should go to the district of his residence. Inconvenience, of course, should not determine legality. Nonetheless, when it is insisted that we take jurisdiction because, otherwise, inconvenience might result, it is well to balance inconveniences.

And it will not do to say that we are dealing with civil liberties. The sending of letters through the mail is not a right. The record in the companion proceeding shows that a hearing was had, notice of which was given to Neher. He chose not to appear. Nonetheless, testimony was presented and a decision was arrived at, after full consideration.

■ It would be stretching the concept of due process to say that a person who voluntarily absents himself from a hearing, or those seeking to communicate with him, should be given the privilege of suing the cabinet officer at a place other than his official residence, in order to establish before a court the fact that the officer was guilty of error. Our governmental system abhors absolutes. It postulates the possibility of error. Methods for review of official abuse of power are inherent in it.

But we should not remove all limitations in pursuit of an unattainable ideal of due process.

■ The object of the fraud order is not to interfere with any of the rights of the people, but to refuse the facilities of the post office establishment to matter defined to be objectionable by the Congress or found to be such by the Postmaster General, after a hearing. See Ex parte Jackson, 1877, 96 U.S. 727, 24 L.Ed. 877. While the constitution has given to the Congress the sole power to establish a postal system (Constitution of the United States, Art. 1, § 8, Cl. 7), it is not beyond the realm of possibility that the Congress might have declined to exercise this power, as, in fact, it refused, for over a century, to extend postal facilities to parcels. The mere establishment of the postal system does not, automatically, confer any rights upon individuals to receive the service, without the restraints or limits imposed under statutory authority.

(2) The Motion to Call a Three-Judge Court

■ The plaintiff has requested that a three-judge court be convened, under the authority of Section 380a of 28 U.S.C.A. The argument which precedes applies, to some extent, to this matter also. The procedure which calls for the intervention of a three-judge court is extraordinary. It should not be invoked unless there is a substantial constitutional question. Jameson & Co. v. Morgenthau, 1939, 307 U.S. 171, 172, 59 S.Ct. 804, 83 L.Ed. 1189. The right of the judge, to whom the request is addressed, to deny it, when satisfied that the challenge to constitutional validity is unsubstantial, has been recognized by the highest courts, both under this statute and under the older statute, 28 U.S.C.A. § 380, which confined the action of such courts to cases seeking to restrain action under state law. See Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; California Water Service Co. v. Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249; and see my opinions in Wylie v. State Board of Equalization, D.C.Cal., 1937, 21 F.Supp. 604; Rok v. Legg, D.C.Cal., 1939, 27 F.Supp. 243.

■ Where a statute is of long standing and has been often before the courts, which have repeatedly rejected the challenge of unconstitutionality, an occasion for invoking this extraordinary remedy does not exist.

■ This is the teaching of the cases just referred to. The particular statute has been before the courts on repeated occasions. Among the decisions which have sustained it are Ex parte Jackson, 1877, 96 U.S. 727, 24 L.Ed. 877; Ex Parte Rapier, 1892, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93; American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Bates & Guild Co. v. Payne, 1904, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894; Public Clearing House v. Coyne, 1904, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092; Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; New v. Tribond Sales Corp., 1927, 57 App.D.C. 197, 19 F.2d 671; Plapao Laboratories v. Farley, 1927, 67 App.D.C. 304, 92 F.2d 228, certiorari denied Oct. 18, 1937, 302 U.S. 732, 58 S.Ct. 56, 82 L.Ed. 566; Enterprise Savings Ass'n v. Zumstein, 6 Cir., 1895, 67 F. 1000.

A fifty-year period stretches between the first and the last of these decisions. Yet we are urged to disregard this long series of rulings on the basis of the dissent of Mr. Justice Holmes and Mr. Justice Brandeis in Leach v. Carlile, supra, in which they expressed doubt as to the constitutionality of this section. Great as is the admiration I have for the views of these outstanding jurists, I doubt if the Supreme Court which has so recently sustained the far-reaching powers conferred under the National Labor Relations Act 29 U.S.C.A. § 151 et seq. (See National Labor Relations Board v. Jones & Laughlin Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352), and the Fair Labor Standards Act, 1938, 29 U.S.C.A. § 201 et seq. (See United States v. Darby, 1941, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430) in dealing with one of the most human relationships, that of employer and employee, and with the rights arising from it, would join these great dissenters in their fear that iniquity would result from denial to a person of the right to receive mail after a full hearing before the Postmaster General.

Administrative action has become so important a part of our governmental policy that we need have none of the misgivings which an older concept of the exclusive place of judicature in the determination of rights might engender.

496

I am, therefore, of the view that no substantial constitutional question is involved which calls for the intervention of a three-judge court.

The application for the convening of a three-judge court is, therefore, denied and the complaint is dismissed.