## NEHER v. HARWOOD.
### No. 10042.

Circuit Court of Appeals, Ninth Circuit.

June 5, 1942.

George Acret, of Los Angeles, Cal., for appellant.

Wm. Fleet Palmer, U. S. Atty., and James L. Crawford and J. Marvin Dean, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant brought suit against the postmaster at La Verne, California (appellee), to enjoin him from carrying into effect a fraud order dated June 28, 1941, issued by the Postmaster General of the United States pursuant to the Postal Fraud Order Statute, 39 U.S.C.A. § 259, and after a noticed hearing in Washington, D. C., at which appellant did not appear but did file a brief in regard thereto after the taking of testimony. Appellant by the bill sought to have the fraud order declared void for the following reasons:

(1) The findings of fact do not show violation of the statute but do show the Postmaster General acted beyond his jurisdiction.

(2) Appellant was conducting a legitimate business, made no fraudulent misrepresentations and violated no statute.

(3) Practically the same as (1).

(4) The fraud order constitutes a taking of appellant's property and liberty without due process of law violating appellant's constitutional rights.

(5) The fraud order statute is unconstitutional.

The defendant-appellee sought dismissal upon the ground that the relief asked could only be decreed against the Postmaster General of the United States, who is not subject to the jurisdiction of the court.

The trial court granted the motion to dismiss and also held that no substantial constitutional question was involved. The court therefore did not call to his aid two other judges as provided by 28 U.S.C.A. § 380a.

This appeal is taken from the order of dismissal. Appellant has withdrawn all question of the constitutionality of the Postal Fraud Order Statute itself, hence we need not consider that question.

## Is The Postmaster General an Indispensable Party?

While it is true that non-joinder of parties defendant is no longer a ground for dismissal of an action under Rule 21, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is our opinion and we hold that this does not apply to a situation where an indispensable party is not before the court. In such situation the only possible course for the Court to pursue is to dismiss. See Ernest v. Fleissner, D.C., 28 F.Supp. 326; Barr v. Rhodes, D. C., 35 F.Supp. 223; Paasche v. Atlas Powder Co., D.C., 31 F.Supp. 31. See, also, Moore's Federal Practice, § 19.04, p. 2160.

In view of the fact that there is confusion in courts as to the necessity of joining superior officers when acts of subordinates are sought to be enjoined we have made a fairly thorough examination of the decisions and opinions upon the subject in an attempt to discover a principle which will largely reconcile them.

Apparently the Supreme Court first spoke upon the subject in Warner Valley Stock Company v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621, wherein suit was brought against subordinate officials in the Department of the Interior to restrain them from exercising authority over land which had been designated as swamp land by the Commissioner of the General Land Office. By such designation, confirmed by the Secretary of the Interior, the land was brought within the jurisdiction of the Department. The plaintiff was the purchaser of patents to the land which had been issued by the Secretary to the State of Oregon. The Court said (165 U.S. at pages 34, 35, 17 S.Ct. at page 228, 41 L.Ed. 621): "The purpose of the bill was to control the action of the secretary of the interior. The principal relief sought was against him, and the relief asked against the commissioner of the general land office was only incidental, and by way of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading".

In the last above cited case the designation of swamp land had been made pursuant to the Act of Congress of September 28, 1850, c. 84, 43 U.S.C.A. § 982 et seq., which act provided that in each state the whole of the "swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be, and the same are, hereby granted to said State", and that it should be the duty of the Secretary of the Interior, as soon as might be practicable, "to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the governor of the State", and, at his request, "cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in said state, subject to the disposal of the legislature thereof". The constitutionality of this Act of Congress was not attacked, but on the contrary the complaint was as to certain acts done by the Secretary of the Interior thereunder. It was held that the action did not lie alone against the subordinate.

After the decision in the Warner Valley Stock Co. case and before 1925, several cases reached the Supreme Court in which acts of subordinate officers were enjoined despite the fact that their superiors were not made parties to the actions. Without discussing the doctrine that the superior is an indispensable party in such actions, the Court upheld the lower courts in these decisions. See American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074, and other cases cited in the "Argument for Appellant" preceding the opinion in Webster v. Fall, 266 U.S. 507, 508, 45 S.Ct. 148, 69 L.Ed. 411.

Also before 1925 the case of Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 533, 68 L.Ed. 1068, reached the Supreme Court. There suit had been brought against a local prohibition director to enjoin him from giving effect to a restriction contained in the plaintiff's permit to sell intoxicating liquor. The permit involved had been issued by a subordinate under general regulations promulgated by the Commissioner of Internal Revenue. In holding that the Commissioner of Internal Revenue was an indispensable party to the action the Court pointed out that the Act of Congress specifically provided that the Commissioner of Internal Revenue should have authority to issue permits and to prescribe the form thereof, and to designate and limit the acts that were to be permitted. The Court then said, "The act and the regulations make it plain that the

prohibition commissioner and the prohibition director are mere agents and subordinates of the Commissioner of Internal Revenue. They act under his direction and perform such acts only as he commits to them by the regulations. They are responsible to him and must abide by his direction. What they do is as if done by him. He is the public's real representative in the matter, and, if the injunction were granted, his are the hands which would be tied. All this being so, he should have been made a party defendant—the principal one—and given opportunity to defend his direction and regulations".

Here again we have a case in which the foundation of the superior officer's authority is not attacked, but where the charge instead is that that officer has in some manner abused a discretion vested in him. The Court held in such situation that the superior officer whose actions are being attacked should have an opportunity to defend his direction and regulations.

Then followed the case of Webster v. Fall, supra, decided in 1925. The plaintiff was a member of the Osage Tribe of Indians, and brought suit against the Superintendent of the Osage Agency to compel payment to him of certain funds due him under the Act of March 3, 1921, § 4, c. 120, 41 Stat. 1249, 1250. That Act required the Secretary of the Interior to cause to be paid to each adult member of the Osage Tribe not having a certificate of competency one thousand dollars quarterly, payments to be made under the supervision of the Superintendent of the Osage Agency. Section 2087, Rev. Stats., 25 U.S.C.A. § 130, provided that no money should be paid to Indians while they are under the influence of any intoxicating liquor, or "while there are good and sufficient reasons leading the officers or agents, whose duty it may be to make such payments or distribution, to believe that there is any species of intoxicating liquor within convenient reach of the Indians". The payments to the plaintiff had been refused under this provision.

The Supreme Court directed that the bill be dismissed for want of an indispensable party, the Secretary of the Interior, pointing out that the Superintendent and the Disbursing Officer can act only under the directions of the Secretary, saying: "To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading". [226 U.S. 507, 45 S.Ct. 149, 69 L.Ed. 411.]

It should be noted again that the acts of the Secretary of the Interior were performed under the specific authority of an Act of Congress. The basis of the plaintiff's complaint was that the "orders, rules, or regulations issued thereunder by the Secretary of the Interior, in so far as appellant is concerned, are unconstitutional". The constitutionality of the Act itself was not attacked.

In urging that the Court should take jurisdiction of the cause despite the lack of the Secretary of the Interior as a party defendant, the plaintiff called the Court's attention to the various cases to which we have above referred, which had reached the Court after the decision in the Warner Valley Stock Company case, supra, in which the subordinate officer had been sued without joining his superior. In reply the Court said: "Counsel for appellant directs our attention to other cases, where this court proceeded to determine the merits notwithstanding the suits were brought against inferior or subordinate officials without joining the superior. We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if any one had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."

We mention this for the reason that the appellant in the instant case has urged that the case of American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, which was one of the very cases to which the Supreme Court referred in the above quotation, is authority for their contention that the local postmaster may be sued without the joinder of his superior officer. It is apparent that the case is not authority on the point.

Four months after Webster v. Fall was decided, the Supreme Court handed down its decision in Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 506, 69 L.Ed. 927, and this case has been the subject of much diverse comment and misunderstanding. The appellant herein argues that Colorado

v. Toll is authority for sustaining his right to sue the local postmaster in the instant case, but properly understood it becomes apparent that there is no such consequence. The sole defendant in that case was the Superintendent of the Rocky Mountain National Park and it was sought to enjoin him from enforcing certain regulations for the government of the park, and in particular respecting the roads within the park, which were alleged to be beyond the authority conferred by Acts of Congress and to interfere with the sovereign rights of the State. In discussing the Act creating the park the Court pointed out that "By section 2 the Act [16 U.S.C.A. § 193] is not to 'affect any valid * * * claim, location, or entry under the land laws of the United States, whether for homestead, mineral, right of way, or any other purpose whatsoever,' and by section 3 [16 U.S.C.A. § 194] 'no lands located within the park boundaries now held in private, municipal, or State ownership shall be affected by or subject to the provisions of this Act'."; and that "There is no attempt to give exclusive jurisdiction to the United States, but on the contrary the rights of the State over the roads are left unaffected in terms". The Court in holding that the action could be maintained without the joining of the Secretary of the Interior, said: "The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States".

The plaintiff in this case, it is clearly seen, was not claiming that the superior officer had abused a discretion legally vested in him, but rather that he had no statutory authority whatsoever to issue the regulations complained of. The confusion as to this case and the Gnerich and Webster cases now clears. The Supreme Court in Colorado v. Toll did not overrule these two former cases, but instead properly and logically discerned the principle upon which they differed. In the two former cases the superior officer had acted under a statute which was not attacked as unconstitutional, but it was contended that the superior had in some manner abused his discretion and in such circumstance it was held that he should be made a party to the action in order to defend his direction and regulations. Where he was without authority to act at all in the premises his actions assuming to authorize action by the subordinate were of no validity and left the subordinate as the actor subject to restraint.

With these principles in mind we turn to the decisions of the various Circuit and District Courts on the problem, and first the decisions of this Court.

Moody v. Johnston, 9 Cir., 66 F.2d 999, arose in 1933, and involved an action brought by white owners of former Indian allotments within the Flathead Reclamation Project against the Project Manager of the Irrigation Project, to enjoin him from causing any assessment to be levied against them for the construction, operation or maintenance of the project and from asserting or claiming that they had no water rights from a stream arising within the reservation.

In holding that the cause should have been dismissed for want of an indispensable party defendant (the Secretary of the Interior) this court pointed out that the Act involved provided that the Secretary of the Interior was the person authorized to make all the charges, determinations, etc., and that the Project Manager merely followed the Secretary's orders. The decision that the cause should have been dismissed was based on the authority of the Webster and Gnerich cases. There was no contention that the superior officer was not authorized by the statute to make the determination involved, and this distinguished the case from Colorado v. Toll.

Shortly after our decision in the Moody case, we had for consideration Moore v. Anderson, 68 F.2d 191, 193, which was an action brought against the Superintendent, Irrigation Manager, Watermasters and officials of the Bureau of Reclamation of the United States of America to enjoin them from refusing to deliver a quantity of water to which plaintiffs claimed they were entitled by virtue of contracts with the United States. The charges for the water had been fixed by the Secretary of the Interior. Again we followed the Webster and Gnerich cases, pointing out that "the acts complained of were done at the direction of the Secretary of the Interior, and he, in turn, had authority under the law to direct that the acts be done". We said "under such circumstances, the Secre-

tary is an indispensable party defendant in a suit where the acts of his subordinates are questioned."

We gave consideration to Colorado v. Toll and pointed out that it was not in point for the reason that:

"In the Toll case, the bill alleged that the regulations that the superintendent of the park was seeking to enforce were beyond the authority conferred by acts of Congress and interfered with the sovereign rights of the state. * * *

"In thus stating the rule, the Supreme Court used the word 'authority' as it had been used in the beginning of the opinion; that is, 'beyond the authority conferred by the acts of Congress.'"

In Berdie v. Kurtz, 9 Cir., 75 F.2d 898, 902, we again had the problem before us. The action was against the officer in charge of the Los Angeles office of the Field Investigation Section under the Agriculture Adjustment Act, members of the Milk Industry Board organized under the A.A.A., and also against the United States Attorney at Los Angeles, to restrain the enforcement of the A.A.A. and two milk licenses issued by the Secretary of Agriculture. It was conceded that no part of the milk handled by the plaintiffs was produced outside California, and that it never left the State, and that it was not intended by anybody connected with it that any part of it should leave the State. The basis for the assertion of authority over the milk industry in the Los Angeles sales area was that it was interstate commerce. The plaintiffs contended that even if Congress has the power to delegate such authority to the Secretary of Agriculture it had not attempted to do so, but on the contrary, had expressly prohibited its exercise. Therefore it became apparent that the rule of Colorado v. Toll became applicable. We said: "The primary question for our consideration is whether or not the Secretary of Agriculture has attempted to exercise powers which Congress has not delegated to him. This involves a consideration of the rules and regulations promulgated by the Secretary of Agriculture and the statutory authority invoked to support such action, that is, the Agricultural Adjustment Act [7 U.S.C.A. § 601 et seq.]. * * *"

Upon examination of these questions we found that the Secretary of Agriculture had attempted to extend his power over intrastate commerce, although the Act of Congress under which he was operating

permitted him to license dealers engaged in the handling of interstate commerce only. We stated that although there is power in the federal government over intrastate commerce in certain cases because of the relation of that commerce to interstate commerce, a delegation of power by Congress to the Secretary of Agriculture over interstate commerce only would not carry with it the corresponding power, if it exists, over intrastate commerce which Congress necessarily reserved when the powers delegated relate solely to interstate commerce. We therefore concluded that the interference by the Secretary of Agriculture with the plaintiff's business was without warrant or authority in law, and that his subordinates therefore could not "shield themselves behind the unauthorized regulations". We held that the Secretary of Agriculture was not an indispensable party in the circumstances, on the authority of Colorado v. Toll.

And now as to cases decided by other Circuit Courts. Ferris v. Wilbur, Secretary of the Navy, et al., 27 F.2d 262, 263, arose in the Fourth Circuit, and involved the question of whether the suit might be prosecuted against the naval officer in charge of the depot for storing high explosives acquired by the federal government for that purpose, to restrain the storing of such explosives, the cause having been dismissed as to the Secretary of the Navy for lack of jurisdiction over him. In holding that the case should be dismissed, as to the remaining defendant, the Court did not base its decision on the lack of an indispensable party, but "because it was in effect a suit against the United States and sought to restrain as a nuisance the exercise of a discretion reposed in the executive by a valid act of Congress".

In so holding the Court found that the title to the land upon which the explosives were proposed to be stored was held by the United States; that it was purchased with the consent of the Legislature of Virginia; that exclusive legislative power over the land acquired was vested in Congress; that Congress had expressly authorized that it be used for the storage of high explosives; and that the discretion to determine what explosives should be stored there and how they should be stored had been vested in the Secretary of the Navy. The action to restrain the storing of explosives on the property was based on the claim that the storage of such explosives would continue

to be a source of danger to lives and property for miles around, and depreciated the value of plaintiffs' property so as to constitute a taking thereof without due process of law. The action was not one to restrain unauthorized action by a government official, or action based upon a statute alleged to be unconstitutional, but, as the Court pointed out, "a suit to restrain action in which the official is exercising valid governmental authority by virtue of his office".

Yarnell v. Hillsborough Packing Company, 70 F.2d 435, 92 A.L.R. 1475, was decided by the Circuit Court for the Fifth Circuit. The action was brought against enforcement officers under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., without making the Secretary of Agriculture a party to the action. The bill of complaint alleged, and the trial Court held, that the sections of the Agricultural Adjustment Act involved were unconstitutional and therefore void. It thus appeared that the very foundation of the Secretary's authority was attacked, and under Colorado v. Toll, supra, it followed that the Secretary was not an indispensable party. The appellate court reversed the trial court on the merits, but this does not affect in any way the principle with which we are here concerned. .

Ryan v. Amazon Petroleum Corporation, 71 F.2d 1, also arose in the Fifth Circuit, and was decided shortly after the Yarnell case, supra. The action was brought by producers of petroleum to enjoin the Railroad Commission of Texas and other state officers from enforcing orders of the commission which restricted the production of oil, and at the same time to enjoin Ryan, an agent of the Department of the Interior of the United States, and the United States District Attorney and the Marshal from enforcing certain portions of the N.R.A. and of the regulations and code for the petroleum industry promulgated thereunder. While the court held that the statute involved was not unconstitutional still the attack was upon the statute under which the Secretary of the Interior had issued his regulations. Again the Court followed the case of Colorado v. Toll, supra, and held that the Secretary was not an indispensable party. The Supreme Court issued certiorari and reversed the case upon the merits, thereby affirming the action of the trial court in accepting jurisdiction. Panama Refining Co. v. Ryan, 293 U.S. 388, 54 S.Ct. 241, 79 L.Ed. 446.

Rood v. Goodman, 83 F.2d 28, is another case decided by the Circuit Court of the Fifth Circuit. However, in this case it appeared that the action was brought under the Mail Fraud Statute and was brought against the local postmaster to restrain him from preventing delivery of the plaintiff's mail. The trial court had considered the merits of the cause despite the fact that the Postmaster General was not made a party to the action. Upon appeal the Circuit Court of Appeals, after determining that the Postmaster General was not an indispensable party to the action, went on to say that even if he were an indispensable party, still it would not follow that the decree of the District Court should not stand, for there was no possible prejudice to the Postmaster General since the District Court had held his fraud order to be valid.

In 1936 the Honorable Learned Hand, United States Circuit Judge for the Second Circuit wrote the opinion of that Court in the case of National Conference on Legalizing Lotteries, Inc., v. Goldman, 85 F. 2d 66, in which he analyzed the cases on the subject. Yarnell v. Hillsborough Packing Co., Ryan v. Amazon Petroleum Corporation and Rood v. Goodman are all interpreted as holding that Colorado v. Toll overruled Gnerich v. Rutter and Webster v. Fall. We do not read the cited cases as so holding. On the contrary, except for Rood v. Goodman [and the opinion in that case closes with an expression of doubt as to its soundness] they appear to us as being entirely consistent with the Colorado, Gnerich and Webster cases.

And now that the light of the underlying principles makes all clear, may we not suggest that the expression in the National Conference opinion, "And the Ninth [Circuit] has decided the point both ways" was indubitably sired by error. However, under the principles that we have mentioned, the decision in the latter case was proper and consistent with the other leading cases which we have cited.

It would serve no useful purpose to go into all of the other cases on the subject in great detail. The following, however, are cases in which the plaintiff attacked the very authority of the superior officer to act or issue the regulations complained of, as contrasted with an attack on the regula-

tions as such; and where the superior officer was held not to be an indispensable party. Hill v. Darger et al., D.C.Cal., 8 F.Supp. 189; Eastman v. United States, D.C.Wash., 28 F.Supp. 807.

Cases in which the authority of the superior officer was not attacked, and where the superior officer was held to be an indispensable party are: Wheeler v. Farley, D.C.Cal., 7 F.Supp. 433; Redlands Foothill Growers et al. v. Jacobs, D.C.Cal., 30 F. Supp. 995; Hawthorne v. Fisher, D.C.Tex., 33 F.Supp. 891; Barr v. Rhodes, D.C.Ky., 35 F.Supp. 223; Scientific Mfg. Co. v. Walker, D.C.Pa., 40 F.Supp. 465; Acret **v.** Harwood, D.C.Cal., 41 F.Supp. 492.[1]

■ It is our opinion and we hold that the District Court in the instant case was correct in dismissing the complaint for want of an indispensable party, the Postmaster General.

### Do the Factual Allegations State a Cause of Action?

But the appellant complains also that the Court (quoting from his opening brief) "In addition, upon his own motion . . dismissed the action, *in effect with prejudice* (italics appellant's) upon the ground that 'no substantial constitutional question is involved'."

It is our opinion and we hold that the Court was right in this statement. As the Court said in Johnson v. Rylander, D.C., 18 F.Supp. 689, 690, "as a practical matter, it makes little difference whether the dismissal be because of lack of jurisdiction or because no cause of action is stated". See, also, Brooks v. Dewar, 313 U.S. 354, 61 S. Ct. 979, 85 L.Ed. 1399.

With this in mind we examine the allegations of the complaint by which the plaintiff attempts to show that he has a cause of action. He alleges, inter alia,

"Ever since the month of May, 1938, the plaintiff has been engaged in the business of furnishing service to customers, which consists of the placing of a prayer card containing the customer's name in a machine, which the plaintiff has named a cosmic generator. * * * The plaintiff's said enterprise is legal and legitimate and is conducted in accordance with high ethical and moral standards, and is founded on the belief that God will help those who demonstrate their faith in him and on the proposition that the mind of the human race is largely responsible for its ills and is a perceptible factor in treating, curing, benefiting and remedying said ills and that the power of prayer and of mental healing, otherwise known as auto suggestion, together with the use of said cosmic generator, is helpful to the human health, * * * Aside from the said mental and faith healing and divine healing features of the plaintiff's said service the plaintiff believes that his said cosmic generator does in fact gather from the ether and distribute waves or forces and which waves or forces of themselves the plaintiff has found have a beneficent effect upon the human health".

The service was furnished upon a schedule of prices for individual and family treatment. It is proper to suggest that plaintiff's service has nothing to do with mental or faith healing and nothing of that nature is claimed except as stated in the last above quotation. It is intimated in the complaint that even if the machine into which the card is placed does not do the work, the fact that the poor soul seeking relief from physical ills may receive help simply because of the misrepresentation in which he has faith, a sort of argument that the more cleverly convincing the misrepresentation is put the more it will be believed and the belief if strong enough will effect the cure—a sophistry that would

---

[1] Acret v. Harwood involved the very same fraud order which is involved in the instant case, and was brought by the instant plaintiff's attorney to enjoin the postmaster at La Verne from refusing to deliver his mail to Neher, claiming, according to the statement of facts appearing in the opinion, that the fraud order and the statute under which it was made were unconstitutional. The court analyzed the cases and said the distinguishing feature lay in the "power of the superior to act", a holding entirely in accord with the applicable principles we have endeavored to point out in our opinion. While the complaint apparently alleged that the statute under which the Postmaster General issued his order was unconstitutional, the court declined to call to his aid a three judge court, stating that "Where a statute is of long standing and has been often before the courts, which have repeatedly rejected the challenge of unconstitutionality, an occasion for invoking this extraordinary remedy does not exist". Since the attack on the constitutionality of the statute was not substantial, we have placed this case in the category of cases in which there was no constitutional attack made.

justify and legalize any fraud upon the sufferer of physical ills.

He alleges that he was at the time the order issued receiving "about seven letters daily containing remittances to him in connection with said business, said remittances being in the total sum of about seven dollars per day".

Appellant asserts that he is not a scientist. He claims no understanding of his machine—a mere card bearing a person's name and address is placed in some sort of a machine-like physical thing and curative power is drawn from the Divine reservoir to perform a cure in the human being concerned. This bears no resemblance to a religious faith or to a metaphysical understanding or to a useful force drawn from nature's laboratory by an understanding mind.

Attached to the complaint is an exhibit which purports to be a record of all proceedings before the Post Office Department except Exhibits 12 to 15 and we are not informed as to these. The exhibit to the complaint includes a photostatic copy of a circular[2] and the contents of another circular together with much evidence. The statements in these circulars are a mass of jumbled incoherent phraseology descriptive of the mechanical treatment of prayer in relation to the name bearing card placed in the machine. The whole pamphlet bristles with the indicia of deception and fraud.

We quote from one of the circulars:

"People are connected with the Cosmic Rectifier in a very marvelous way. Few people know of the relation that exists between themselves and their Name. Write your Name and Address on a number of pieces of paper, scatter them far and wide, no matter where they go there will be a cosmic connection or band from you at one end to your name on these papers at the other end. The relation is the same no matter how close or how far away your name may be. Now if one of these papers having your name and address on it be placed in the space between the two large plates just above the rectifier, at once something begins to happen. This space into which your name has been placed is highly charged with a Positive Energy which we call Cosmic Affinity. Your name begins to absorb this Positive Cosmic Affinity, but the same moment your body, now far away from your name, also begins to absorb Negative Cosmic Affinity. This cannot be otherwise since there is always Cosmic Harmony between your body and your name."

Neher's last expression to the examiners was in a letter from which we quote as follows: "Since you were here I have made quite a lot of improvement. The Cosmic Generator you saw has been replaced by another. The principal involved in the Generator you saw also is basic in this one. The difference being the method used in getting the cosmic rays into the Cosmic Field. The prayer or request for the particular Ray is placed under the Mould into which the metal is poured. The Ray comes through the metal when in a molten state which causes the metal to be permanently in harmony with that Ray when cooled. In the old method if the prayers become Disturbed it would cease to work. This new setup makes a much more compact job as well as being almost fool proof. It also makes a unit that may be marketed."

Appellant has patterned his complaint upon the case of McAnnulty, supra, and relies upon that case. The facts of the two cases are not parallel. There there was involved a school for the understanding mind; here no understanding of any kind is premised. We hold that no cause of action was stated.

But appellant need not rest under the onus and handicap of the terms of this order for the rest of his life as it is argued to us would be the case if we affirm the judgment. It is not doubted that this order would be relaxed or withdrawn upon a proper showing to the Postmaster General that the innocent and credulous under the awful handicaps of physical or mental illness need no further protection from a continuation or resumption of the fraud. And upon such showing in proper circumstances with proper parties to the action a chancellor would require that this be done.

Judgment affirmed.

HANEY, Circuit Judge, concurs in the result.

---

[2] Appellant claims that the circulation of this first circular was discontinued prior to the hearing before the Post Master General. Nevertheless it was not withdrawn nor its effect counteracted in any way.