**CORONA v. LANDON, District Director et al.**

No. 15014.

United States District Court
S. D. California, C. D.

March 13, 1953.

192

Esther Shandler, Los Angeles, Cal. for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., and Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

The plaintiff, Francisco Espinoza Corona, is a native of Mexico. He entered the United States for permanent residence at Laredo, Texas, on March 29, 1928. In January, 1945, he went to Mexico for a short visit, returning on January 28, 1945. He is mar-

ried to a native-born citizen, Dominga Franco Corona, and is the father of two native-born sons, aged seven and four years. He lives with his family.

On October 17, 1946, a warrant of arrest was issued by the Immigration and Naturalization Service which was served on him on or about May 27, 1947. He is at liberty on a bond of $4000.00.

The warrant of arrest charged that the plaintiff entered the United States at San Ysidro, California, on January 28, 1945, and has been found in the United States in violation of the immigration laws and subject to deportation under the Act of October 16, 1918, as amended, in that he has been found to have been, prior to entry, a member of an organization, association, society or group, that advises, advocates or teaches the overthrow, by force or violence, of the Government of the United States.

Hearings upon the charge contained in the warrant began on April 14, 1950. On April 26, 1951, at the conclusion of the hearings, the Hearing Officer issued his decision recommending that plaintiff be deported from the United States upon the warrant charge and upon additional charges, introduced at the hearings, that the plaintiff was found to have been, both before and after entry, a member of the Young Communist League of the United States, a section, subsidiary, branch, affiliate or subdivision of the Communist Party of the United States.

After timely exceptions were filed with the Commissioner of Immigration and Naturalization, the Commissioner affirmed and adopted the recommendations of the Hearing Officer in so far only as they related to his finding that the plaintiff had been, both before and after entry, a member of the Young Communist League. The Commissioner deleted the charge contained in the warrant that the plaintiff was, prior to entry, a member of an organization, association, society, or group that advises, advocates or teaches the overthrow, by force or violence, of the Government of the United States.

The Commissioner's decision was affirmed by the Board of Immigration Appeals on November 19, 1952. The order affirmed by the Board is final and a warrant for the plaintiff's arrest has been issued pursuant to it.

In a Complaint for review under the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1011, directed only against H. R. Landon, District Director, Los Angeles District of the Immigration and Naturalization Service, plaintiff, after stating the facts just recited, alleges, generally, that the administrative hearing was unlawful and void, and that he was denied due process and a fair hearing. He challenges the constitutionality of Section 22 of the Internal Security Act of 1950, 8 U.S.C.A., former Section 137, now Section 1182(a)(28)(C) of the same title, which makes membership in any section, subsidiary, branch, affiliate or subdivision of the Communist Party by an alien after entry a ground for deportation. He seeks a determination that the Order and Warrant for his deportation are void as are also all the deportation proceedings. He requests us to enjoin the defendant Landon from deporting him. An Order to Show Cause was issued on January 28, 1953. Prior to the hearing on the Order to Show Cause, the defendant moved to dismiss upon the ground that the Court had no jurisdiction of the matter and that the Commissioner of Immigration was an indispensable party to the proceedings without whose presence in court the matter cannot be determined.

I am of the view that the Complaint does not state a claim upon which relief can be granted. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. I do not believe that the determination of the Commissioner of Immigration ordering deportation can be reviewed in an action against the District Director. Conceding that, *generally,* the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., applies to deportation proceedings, Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, and that the scope of judicial inquiry is broadened, 5 U.S.C.A. § 1009(e), the decisions to this effect do not *substitute* other methods of review for the accepted method of reviewing an order of deportation by *habeas corpus.* 5 U.S.C.A. § 1009.

Sung v. McGrath, supra, was such a proceeding. The only question before the Court was whether certain requirements,—especially the one which prevents certain prosecuting officers from acting as judicial officers,—contained in the Administrative Procedure Act applied to such hearing. That case is made the basis for the decision of the Court of Appeals for the Ninth Circuit in Yanish v. Barber, 9 Cir., 1950, 181 F.2d 492. The Court, in a very brief *per curiam* decision, merely held, after citing Sung v. McGrath, supra, that the Administrative Procedure Act and the regulations under it applied to proceedings instituted *prior* to the enactment of the Act. It did not rule, and I do not interpret it as passing upon any other grounds advanced by Judge Harris in his decision. Yanish v. Wixson, D.C.Cal.1948, 81 F.Supp. 499. In the absence of a binding decision from the Court of Appeals for the Ninth Circuit, I share, as the more logical one, the view expressed in such decisions as Connor v. Miller, 2 Cir., 1949, 178 F.2d 755; Podovinnikoff v. Miller, 3 Cir., 1950, 179 F.2d 937; Slavik v. Miller, 3 Cir., 1950, 184 F.2d 575, and Paolo v. Garfinkel, 3 Cir., 1952, 200 F.2d 280, that in an action such as this, where the final order of the Commissioner of Immigration and Naturalization is in issue, he is an indispensable party. If we apply to these proceedings, *indiscriminately*, the ruling of the Supreme Court in Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, we will find ourselves reviewing, as the plaintiff here seeks to have us review, all the actions of the Commissioner in a proceeding to which he was not a party.

Under the teachings of Williams v. Fanning, supra, that could well be done provided the conditions were such that

"the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." Williams v. Fanning, supra, 332 U.S. 494, 68 S.Ct. 189.

The reason why the Court held that a proceeding against the local postmaster was adequate under the circumstances were these: The Postmaster General, after a hearing in Washington, D. C., found that Williams' weight-reducing enterprise was fraudulent. He issued a fraud order, 39 U.S.C.A., §§ 259, 732, directing the Postmaster at Los Angeles, California, to refuse payment of any Money Order drawn to the order of the petitioners, to advise the sender that the payment had been forbidden, and to stamp "fraudulent" on all mail matter directed to the petitioner and to return it to the sender.

Williams' business, as the opinion says, was located at Los Angeles. The fraud order affected *his business in that locality*. The Postmaster General *did not* issue an order at large commanding *every* postmaster who might receive mail addressed to Williams to refuse it. He specifically directed the postmaster of Los Angeles to do the enumerated matters. The Supreme Court considered the local postmaster the only indispensable party because it was he who declined to cash money orders, marked the mail "fraudulent" and refused to allow it to be delivered under a direct order issued to him. Rightly, as the Court said:

"* * * If he desists in those acts, the matter is at an end." Williams v. Fanning, supra, 332 U.S. at page 494, 68 S.Ct. at page 189.

Similarly, Koepke v. Fontecchio, 9 Cir., 1949, 177 F.2d 125, which is referred to as warranting the relief sought in this case, discloses the fact that there, as in Williams v. Fanning, supra, the Court was dealing with a *localized business*. The question before the Court was whether the plaintiff's premises in use as a motor court were controlled housing accommodations. The Court being of the view that they were not, the doctrine of Williams v. Fanning, supra, was applied, for the reason that such declaration in an action against the area rent director would effectively determine the issue of decontrol, and would leave the owner undisturbed by the only official *who could interfere, the local area rent director*.

In the present case, the Order of Deportation affects not the petitioner's property or business located in a particular place, but his person. The warrant of deportation which follows the Order of De-

portation is not directed to a particular director. It is a general warrant of deportation which may be served in any district where the plaintiff is found. 8 U.S.C.A. §§ 1251, 1252. The district director performs no other function than to execute the warrant in his district *if the deportee is found there*.

■ This is the ministerial act of a subordinate officer. An attack on it could not bring up for determination the validity of the warrant of arrest and of the orders of the Commissioner under which a particular district director might take the deportee into custody.[1] Indeed, as Judge Goodrich pointed out in Paolo v. Garfinkel, 3 Cir., 1952, 200 F.2d 280, if the deportee moved to another district, a ruling in his favor in the district of his former residence would not prevent the execution of the warrant by the director of the district to which he has moved, who was not a party to the action. Judge Goodrich aptly stated:

"What Mr. Garfinkel (the Pittsburgh officer) does in the Western District of Pennsylvania is to carry out the orders of the Commissioner of Immigration and Naturalization whose official home is Washington, D. C. Unless that officer is brought into the litigation and an order made against him [the alien is not] going to profit much from an order issued against a district official only.

"In other words, applying the test which the Supreme Court gave us in the quotation above, we conclude again, as we did before, that this type of action must be brought where personal service can be made upon the Commissioner of Immigration and Naturalization. Since that officer has his official home in the District of Columbia, the suit must be brought there." 200 F.2d at pages 281–282.

■ A study of the complaint, as already outlined, will show how the applica-

1. Jeager v. Simrany, 9 Cir., 1950, 180 F. 2d 650, does not teach a contrary doctrine. The case was decided not on the basis of Williams v. Fanning, supra, but on the basis of Neher v. Harwood, 9 Cir., 1942, 128 F.2d 846, 158 A.L.R. 1116, which originated in my court. Acret v. Harwood, D.C.Cal.1941, 41 F.Supp. 492. Judge Denman, in the opinion, noted (Note 2) that the case is overruled as to its main doctrine by Williams v. Fanning, supra. But he was of the view that the principle declared in it to the effect that

"Where he (the superior official) was without authority to act at all in the premises his actions assuming to authorize action by the subordinate were of no validity and left the subordinate as the actor subject to restraint." 128 F.2d at page 849 is still valid. And he found facts in the case warranting the application of the principle. The appellee had a valid certificate of lawful entry. 8 U.S.C. A. § 728. The Commissioner claiming that it was procured by falsification, *directed the officer in charge of the Immigration and Naturalization Service in Tucson, Arizona, to conduct a hearing and report on the matter.* The appellee was ordered to appear and show cause why the record of registry and certificate of lawful entry should not be cancelled. Instead of appearing, he brought an action for declaratory relief to establish his right to retain the certificate and to restrain the

officer in charge of the Immigration and Naturalization Service in Tucson, Arizona, from proceeding with the hearing. The Court, as already stated, finding that the Commissioner had *no power* to cancel such records or to institute proceedings toward that end, enjoined the local officer who had been *ordered* to conduct the hearing. The ruling was made on the ground that (1) where no *authority* exists in the principal to act, a court of equity will intervene, and (2) that when this is the case, the subordinate in charge of the hearing *may* be made the subject of the Court's interdiction. This for the reason that the Court's order will stop *all* interference. Although the case does not attempt to apply the teachings of Williams v. Fanning, supra, it can be reconciled with them because a *specific direction* had been given by a superior to an inferior officer *to do certain acts*, which neither had the power to do. Their prohibition in an action against the subaltern would afford *absolute* relief.

I find nothing in the teachings of this case which supports the doctrine sought to be invoked here that the validity of the Order of Deportation can be tested in a proceeding to which the Commissioner of Immigration and Naturalization is not a party. Here, *the authority to act is not challenged. Only the manner of its exercise.*

tion of the doctrine of the Williams case to the facts in this case would result in a review of acts which are unrelated to the *mere apprehension* for deportation by the district director under the warrant. To illustrate: It is alleged in the complaint, as one of the errors, that the Commissioner refused to allow the plaintiff to choose a country for voluntary departure, under Section 243(a) of the Immigration and Naturalization Act, 8 U.S.C.A. § 1253. As the granting of that privilege is not obligatory, if the Attorney General concludes that deportation to such country

"would be prejudicial to the interests of the United States",

we would be reviewing a discretionary matter.

Discretionary also is the power of the Attorney General to suspend deportation and allow voluntary departure. 8 U.S.C.A. § 1254.

 Nor can we inquire in this proceeding into the rather nebulous general charges of denial of due process in the hearings, insufficiency of the evidence to sustain the findings, and into the other general allegations of unfairness, in which this complaint abounds. Assuming that these might be reviewed on *habeas corpus,* Sung v. McGrath, and that the rule of "substantiality", 5 U.S.C.A. § 1009(e), now applies to such review, see, United States ex rel. Lindenau v. Watkins, D.C.N.Y.1947, 73 F.Supp. 216, 219–221, this is not such proceeding. Nor can it be turned into one, the defendant not being in custody. See, Medalha v. Shaughnessey, D.C.N.Y., 1951, 102 F.Supp. 950, 951.

 An effective order that would help the plaintiff, *no matter where he might be,* would require the Commissioner to recall his final order of deportation and the warrant which followed it. This could only be done if an order issued by this court could bind the Commissioner. This could occur only if he were a party to the action. He is not and cannot be made a party because his official residence is Washington, D. C., where he performs his duties. 8 U.S.C.A. § 1103, 28 U.S.C.A. § 1391(b). In the circumstances,

"To enjoin enforcement of the deportation orders by the subordinate before the court would be meaningless without concurrence in the decree by his superior. *The Commissioner, his superior, would not be bound by the decree and could enforce the deportation orders in another district.*" Birns v. Commissioner of Immigration and Naturalization, D.C.Ohio 1952, 103 F.Supp. 180, 182. (Emphasis added.)

The Commissioner is, therefore, an indispensable party, for the decree granting the relief sought

"* * * will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him." Williams v. Fanning, supra, 332 U.S. at page 493, 68 S.Ct. at page 189.

And see, Daggs v. Klein, 9 Cir., 1948, 169 F.2d 174, 176.

 The attack on the constitutionality of Section 22 of the Internal Security Act of 1950, 8 U.S.C.A. § 1182(a)(28)(C), lacks merit. In very recent decisions, Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 and Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586, the Supreme Court has upheld the power of the Congress to exclude long resident aliens for membership in forbidden organizations, even when such membership had terminated before the enactment of the statute.

It is the gloss of these cases that so long as the alien remains such, he is subject to expulsion *on any grounds* the Congress may choose. As said in Carlson v. Landon, supra:

"The basis for the deportation of presently undesirable aliens resident in the United States is not questioned and requires no reexamination. When legally admitted, they have come at the Nation's invitation, as visitors or permanent residents, to share with us the opportunities and satisfactions of our land. As such visitors and foreign nationals they are entitled in their persons and effects to the protection of our laws. So long, however, as aliens fail

to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders." 342 U.S. at page 534, 72 S.Ct. at page 531.

I am, therefore, of the view that the petitioner has chosen the wrong remedy, that the classic remedy in such cases still is *habeas corpus,* after the plaintiff has been taken into custody, in which, under the broader scope of review of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), the substantiality of the evidence to sustain the findings, the fairness of the hearings and the validity of the Commissioner's actions involved can be tested. Conversely, we have no jurisdiction to entertain a *general* review of the determination of the Commissioner of Immigration in a deportation proceeding in an action of this character to which he is not a party.[2]

It follows that the Order to Show Cause must be discharged and the Complaint dismissed.

2. After this opinion was filed, the Supreme Court, in Heikkila v. Barber, 73 S.Ct. 603, held that the provisions of the Administrative Procedure Act do not apply to deportation proceedings, but that the remedy is by way of Habeas Corpus.