## WARNER VALLEY STOCK COMPANY *v.* SMITH.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 550. Argued December 17, 18, 1896. — Decided January 11, 1897.

A bill in equity against the Secretary of the Interior and the Commissioner of the General Land Office, to restrain them from exercising further jurisdiction with respect to the disposition of certain public lands, and from further trespassing upon the plaintiff's right of quiet possession thereof, and to compel the Secretary to prepare patents therefor to be issued to the plaintiff, in accordance with law, and to the end that the plaintiff's title may be quieted and freed from cloud, and for further relief, abates, as to the Secretary, upon his resignation of his office, and cannot afterwards be maintained against the Commissioner alone.

THE case is stated in the opinion.

*Mr. Frederic D. McKenney* for appellant. *Mr. Samuel F. Phillips, Mr. Charles A. Cogswell* and *Mr. James B. McCrellis* were with him on his brief.

*Mr. Assistant Attorney General Whitney* and *Mr. Solicitor General* for appellees.

*Mr. Joseph K. McCammon, Mr. John Mullan* and *Mr. James H. Hayden* filed a brief for appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a bill in equity, filed January 15, 1896, in the Supreme Court for the District of Columbia, by a corporation of the State of Oregon, against Hoke Smith, Secretary of the Interior, and Silas W. Lamoreux, Commissioner of the General Land Office, both alleged in the bill to be citizens and residents of the District of Columbia, and to be "sued for acts done and threatened by them in their official capacity respectively."

The prayer of the bill was "that the said Hoke Smith, Secretary of the Interior, and Silas W. Lamoreux, Commissioner of the General Land Office, their subordinates and agents, may be restrained and enjoined from assuming to exercise further jurisdiction with respect to the disposition of lands described in Oregon swamp land lists No. 30 and No. 31, and from further trespassing upon your orator's right of quiet possession thereof; and that said defendant Hoke Smith may be commanded and enjoined to prepare for issuance unto your orator, in accordance with law, patents for said lands, and to the end that your orator's title to said lands may be quieted and freed from cloud; and that such other and further relief may be administered unto your orator as the peculiar necessities and circumstances of the case may require and merit."

By the act of Congress of September 28, 1850, c. 84, entitled "An act to enable the State of Arkansas and other States to reclaim the 'swamp lands' within their limits," it was enacted that in each State the whole of the "swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of this act shall be, and the same are hereby, granted to said State"; and that it should be the duty of the Secretary of the Interior as soon as might be practicable, "to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the governor of the State," and at his request, "cause a patent to be issued to the State therefor; and, on that patent, the fee simple to said lands shall vest in said State, subject to the disposal of the legislature thereof." 9 Stat. 519. And by the act of March 12, 1860, c. 5, the provisions of the act of 1850 were extended to the State of Oregon, "provided that the grant hereby made shall not include any lands which the government of the United States may have reserved, sold or disposed of (in pursuance of any law heretofore enacted) prior to the confirmation of title to be made under the authority of said act." 12 Stat. 3.

The leading facts alleged in the bill were as follows: The lands in question were sold and conveyed by the State of Oregon in 1883 and 1884, and passed by mesne conveyances

to the plaintiff on January 15, 1892, in consideration of the payment by it of the sum of $19,000. In 1888, these lands, having previously been selected by the State as swamp and overflowed lands under the act of 1860, were certified by the Surveyor General of the United States for Oregon to the Commissioner of the General Land Office. The Commissioner, in March and April, 1892, prepared lists, numbered 30 and 31, of these lands as swamp and overflowed lands, and submitted them to John W. Noble, then Secretary of the Interior, for his approval. He approved both lists on April 9 and December 3, 1892, respectively, "subject to any valid adverse rights that may exist to the tracts of land therein described"; and his approvals were noted upon the records of the General Land Office, and a certified copy of the first list was forwarded to the governor of Oregon, who by letter dated May 12, 1892, requested that a patent of the lands in that list be issued to the State. Upon a petition filed December 29, 1892, by settlers upon the lands, claiming that they were not swamp and overflowed lands at the date of the act of 1860, Secretary Noble, on March 2, 1893, notwithstanding the plaintiff's protest against his jurisdiction to do so, made an order revoking and cancelling his approvals of the lists, and directing the Commissioner to take proper steps to make the revocation and cancellation formally effective. On December 19, 1893, his successor, the defendant Hoke Smith, decided that these lands were not swamp and overflowed lands, and that the State had no claim to them as such, and therefore directed the Commissioner to "cause all decisions, recommending or holding for cancellation entries or declaratory statements, upon the ground that the lands in contest were granted to the State of Oregon as swamp and overflowed lands by the act of March 12, 1860, to be set aside and annulled, and the cases reinstated; and all contests based upon said ground alone to be dismissed." 17 Land Decisions, 571. On October 10, 1894, a motion of the plaintiff for a review of that decision was overruled by the Secretary; and on January 5, 1895, his decision was promulgated by a letter from the Commissioner to the local land officers in Oregon.

The principal contention in support of the bill was that by the acts of Congress of 1850 and 1860 the title to all the swamp and overflowed lands within the State of Oregon, not reserved, sold or disposed of prior to the confirmation of title under those acts, passed to and became vested in the State, subject only to the identification by the Secretary of the Interior of the specific lands as "swamp and overflowed lands, made unfit thereby for cultivation," within the meaning of those acts; that upon such identification, evidenced by the making out of accurate lists and plats of such lands, and the transmission thereof to the governor of Oregon, the title became absolute in the State by relation as of March 12, 1860, and could not be divested by any subsequent action of the Secretary; and that the duty imposed upon him to cause patents of lands so identified and listed to be issued to the State upon the request of the governor was but ministerial.

A general demurrer to the bill was sustained, and a decree rendered thereon for the defendants, by the Supreme Court of the District of Columbia; and that decree was affirmed by the Court of Appeals of the District of Columbia on June 11, 1896, upon the ground that the whole subject remained under the control of the Secretary of the Interior until the execution of the patent. 24 Washington Law Reporter, 392.

The plaintiff took an appeal to this court; and pending this appeal the defendant Hoke Smith, on September 1, 1896, resigned the office of Secretary of the Interior.

That a petition for a writ of mandamus to a public officer of the United States abates by his resignation of his office has been determined by a series of uniform decisions of this court, and has for years been considered as so well settled that in some of the cases no opinion has been filed and no official report published. *Secretary* v. *McGarrahan,* 9 Wall. 298, 313; *United States* v. *Boutwell,* 17 Wall. 604, 609; *Commissioners* v. *Sellew,* 99 U. S. 624, 626; *United States* v. *Schurz,* 102 U. S. 378, 408; *Thompson* v. *United States,* 103 U. S. 480, 484; *United States* v. *Chandler,* 122 U. S. 643; *United States* v. *Lamont,* 155 U. S. 303, 306; *United States* v. *Long,* 164 U. S. 701.

The reasons for this conclusion, as stated by Mr. Justice

Strong, delivering the unanimous judgment of the court, in the leading case of *United States* v. *Boutwell*, which was a petition, by the owner of an order upon the Treasury of the United States, for a writ of mandamus to the Secretary of the Treasury to pay it, were as follows : " The office of a writ of mandamus is to compel the performance of a duty resting upon the person to whom it is sent." " If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance a personal action ; and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right. Hence it is an imperative rule that, previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant ; and it must appear that he refused to comply with such demand, either in direct terms, or by conduct from which a refusal can be conclusively inferred. Thus it is the personal default of the defendant, that warrants impetration of the writ ; and if a peremptory mandamus be awarded, the costs must fall upon the defendant. It necessarily follows from this, that on the death or retirement from office of the original defendant, the writ must abate, in the absence of any statutory provision to the contrary. When the personal duty exists only so long as the office is held, the court cannot compel the defendant to perform it after his power to perform has ceased. And if a successor in office may be substituted, he may be mulcted in costs for the default of his predecessor, without any delinquency of his own. Besides, were a demand made upon him, he might discharge the duty, and render the interposition of the court unnecessary. At all events, he is not in privity with his predecessor, much less is he his predecessor's personal representative." 17 Wall. 607, 608.

The case of a public officer of the United States differs in

this respect from that of a municipal board, which is a continuing corporation (although its individual members may be changed) and to which in its corporate capacity a writ of mandamus may be directed. As was said, in *Commissioners* v. *Sellew*, by Chief Justice Waite: "One of the objects in creating such corporations, capable of suing and being sued, and having perpetual succession, is that the very inconvenience which manifested itself in *Boutwell's case* may be avoided." 99 U. S. 627. And in *Thompson* v. *United States,* Mr. Justice Bradley said : "The cases, in which it has been held by this court that an abatement takes place by the expiration of the term of office, have been those of officers of the Government, whose alleged delinquency was personal, and did not involve any charge against the Government whose officers they were. A proceeding against the Government would not lie." 103 U. S. 484, 485.

The main object of the present bill was to compel the defendant Hoke Smith, as Secretary of the Interior, to prepare patents to be issued to the plaintiff for the lands in question. The mandatory injunction prayed for was in effect equivalent to a writ of mandamus to him. The reasons for holding a suit, which has this object, to have abated, as to him, by his resignation, are as applicable to this bill in equity, as to a petition for a writ of mandamus at common law. Consequently, as against the defendant Hoke Smith, this suit must be held to have abated by his resignation of the office of Secretary of the Interior.

It appears to us to be equally clear that the suit cannot be maintained against the Commissioner of the General Land Office alone.

By the Revised Statutes of the United States, the Secretary of the Interior "is charged with the supervision of public business relating to," among other things, "the public lands, including mines." The Commissioner of the General Land Office is to "perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate

to private claims of land, and the issuing of patents for all grants of land under the authority of the government"; and likewise, "under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations," every part of the provisions of Title 32 of the Revised Statutes, relating to public lands, not otherwise specially provided for. Rev. Stat. §§ 441, 453, 2478. The phrase "under the direction of the Secretary of the Interior," thus used in these statutes, as was said by Mr. Justice Lamar, speaking for this court, "is not meaningless, but was intended as an expression in general terms of the power of the Secretary to supervise and control the extensive operations of the Land Department, of which he is the head. It means that, in the important matters relating to the sale and disposition of the public domain, the surveying of private land claims, and the issuing of patents thereon, and the administration of the trusts devolving upon the government, by reason of the laws of Congress or under treaty stipulations, respecting the public domain, the Secretary of the Interior is the supervising agent of the government to do justice to all claimants and preserve the rights of the people of the United States." *Knight* v. *United States Land Association*, 142 U. S. 161, 177, 178; *Orchard* v. *Alexander*, 157 U. S. 372.

The present suit was avowedly brought against Smith as Secretary and Lamoreux as Commissioner, for acts done and threatened by them in their official character respectively. The prayer of the bill was for an injunction against both of them from assuming to exercise further jurisdiction with respect to the disposition of the lands in question, and from further trespassing upon the plaintiff's right of quiet possession thereof; and that the defendant Smith be commanded to prepare patents therefor to be issued to the plaintiff, in accordance with law, and to the end that the plaintiff's title might be quieted and freed from cloud; and for further relief.

The purpose of the bill was to control the action of the Secretary of the Interior; the principal relief sought was against him; and the relief asked against the Commissioner of the General Land Office was only incidental, and by way

of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading. Calvert on Parties, (2d ed.) bk. 3, c. 13.

This is well exemplified by a decision of Lord Chancellor Hardwicke. Under acts of Parliament, appointing commissioners to build fifty new churches, appropriating money to support the ministers, and providing that the moneys appropriated should be paid to a treasurer, not one of the commissioners, but appointed by the Crown, and should be by him disbursed and applied according to orders of the commissioners, Lord Hardwicke held that a bill by a minister of one of the churches to recover his stipend, and to have a fund in the treasurer's hands invested as required by the acts, could not be maintained against the treasurer alone, without joining any of the commissioners; and said: "This is one of the most extraordinary bills I ever remember; and there is no foundation for relief, either in law or equity. It is brought against Mr. Blackerby, who is nothing but an officer under the commissioners for building the fifty new churches. It would be absurd if a bill should lie against a person who is only an officer and subordinate to others, and has no directory power." "I should think the commissioners only, and not the treasurer, ought to have been parties, for it is absurd to make a person who acts ministerially the sole party." *Vernon* v. *Blackerby*, 2 Atk. 144, 146; *S. C.*, Barnardiston Ch. 377.

This bill cannot be amended by making the present Secretary of the Interior a defendant, because he was not in office before the bill was filed, and had no part in the doings complained of.

As against the Commissioner of the General Land Office, the bill does not strictly abate, as upon the disappearance, by death or resignation, of the sole defendant in an action the cause of which does not survive against representatives or successors. But the bill cannot be maintained against the Commissioner, because it shows no ground for relief against him alone, and the Secretary of the Interior is not and cannot now be made a party.

The objection that the bill cannot be maintained against the Commissioner alone being decisive of the case, it would be inappropriate to express an opinion upon any of the graver questions, fully argued at the bar, touching the jurisdiction of the court, and the merits of the bill; or to leave the record in such a shape as to appear to foreclose any of those questions. It is therefore

*Ordered that the decree be reversed, and the case remanded, with directions to dismiss the bill, with costs, for want of proper parties.*

Mr. JUSTICE BREWER and Mr. JUSTICE BROWN concurred in the result.