## BROWN *v.* BLISS.

PUBLIC LANDS; SWAMP AND OVERFLOWED LANDS; PATENT FOR LAND.

1. Under the act of Congress of September 28, 1850 (9 Stat. 519) granting to certain States swamp and overflowed lands and requiring the Secretary of the Interior to prepare and transmit an accurate list and plat of such land to the Governor of each State, upon whose request a patent therefor should issue to the State, the legal title to such land remains in the Federal Government until such patent is issued; *following* Warner Valley Stock Co. *v.* Smith, 9 App. D. C. 187.
2. Where the Secretary of the Interior under that act prepares and transmits such a list and plat to the Governor of one of the States named, the Secretary or his successor in office has the power at any time prior to the issue of a patent, to vacate and annul such list and plat.

No. 826. Submitted October 6, 1898. Decided October 18, 1898.

HEARING on an appeal by the complainant from an order

sustaining a demurrer to and dismissing a bill for an injunction to restrain the Secretary of the Interior from disposing of certain lands in the State of Oregon, as part of the public lands of the United States. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. William B. Treadwell* and *Mr. Charles A. Keigwin* for the appellant.

*Mr. Willis Van Devanter*, Assistant Attorney General of the United States, for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by the appellant, David Brown, to obtain an injunction against Hon. Cornelius N. Bliss, as Secretary of the Department of the Interior, to restrain that official from disposing of certain lands in Harney County, in the State of Oregon, as part of the public lands of the United States. The lands in question are claimed to be a part of the swamp and overflowed lands situated in the State of Oregon and granted to that State by the United States under and by virtue of the act of Congress of September 28, 1850 (9 Stat. 519), and the act of extension of March 12, 1860 (12 Stat. 3); and the appellant sets up and makes claim to the lands embraced in the bill, under and through the State of Oregon.

The appellee, the defendant below, demurred to the bill, and, upon hearing, the court below sustained the demurrer and dismissed the bill, and from that order this appeal was taken.

The prayer of the bill is that a certain order made by a preceding Secretary of the Interior, the Hon. William F. Vilas, on the 27th of December, 1888, so far as the same may relate to or affect the lands described in the bill, may be canceled and annulled and declared void and of no effect; and that the defendant and his subordinate officers

of the Land Department of the United States may be restrained by injunction from executing or in any way carrying into effect the said order of the 27th of December, 1888, and from holding said lands or any part thereof to be public lands of the United States or subject to entry as such, and from receiving or acting upon any applications or entries for the same or any part thereof, and from in any way interfering with or molesting the plaintiff in the enjoyment of his title to said lands, and for general relief.

The act of Congress of September 28, 1850, Ch. 84, is entitled an "Act to enable the State of Arkansas and other States to reclaim the 'swamp lands' within their limits," and by that act it is provided that in each State the whole of the "swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be and the same are hereby granted to said State;" and that it should be the duty of the Secretary of the Interior, as soon as might be practicable, "to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the Governor of the State," and at his request "cause a patent to be issued to the State therefor; and, on that patent, the fee simple to said lands shall vest in said State, subject to the disposal of the legislature thereof." 9 Stat. 519. And by the act of March 12, 1860, Ch. 5, the provisions of the act of 1850 were extended to the State of Oregon, "provided that the grant hereby made shall not include any lands which the Government of the United States may have reserved, sold or disposed of (in pursuance of any law heretofore enacted), prior to the confirmation of title to be made under the authority of said act." 12 Stat. 3.

This is a summary or an abbreviated statement of the provisions of the Congressional legislation upon the subject of the swamp and overflowed lands of the United States, located in the several States, as made by the Supreme Court of the United States, in case of *Warner Valley Stock Co.* v. *Smith*, 165 U. S. 28, 29, on appeal taken from this court.

The facts of the case are not in any manner complicated, nor are they numerous in detail. The bill alleges that the Hon. Henry M. Teller, as Secretary of the Interior, adjudged and determined that the lands in controversy were swamp and overflowed lands enuring to the State of Oregon under the legislation of Congress, and that the said Secretary of the Interior, then and there, on the 16th of September, 1882, made out an accurate list and plats of said lands, together with other lands embraced in said determination, and transmitted the same to the Governor of the State of Oregon—the list being denominated as "List No. 5."

That said Secretary Teller was succeeded in the Department of the Interior by the Hon. Lucius Q. C. Lamar, March 5, 1885, but up to that time no proceeding whatever had been initiated looking to the vacation or annullment of "List No. 5," or of the action and determination of Secretary Teller, in regard to said lands.

That Secretary Lamar was succeeded in office by the Hon. William F. Vilas, on December 6, 1887, and that on December 27, 1888, said Vilas, as Secretary, annulled, canceled and revoked said "List No. 5," and annulled and revoked the determination of his predecessor in office, Secretary Teller, and thereupon himself adjudged and determined that said lands were not swamp and overflowed, within the meaning and intent of the statute.

It is further alleged in the bill that after the proceedings just cited, there were divers proceedings taken before the Secretary of the Interior and in the General Land Office, by the State of Oregon, and by the grantors of the plaintiff, to set aside and have held for naught the action and determination of said former Secretary Vilas, which proceedings came to an end within a year before the filing of the present bill, and that the present Secretary of the Interior, the Hon. Cornelius N. Bliss, is proceeding to put in force and carry out the action of the former Secretary Vilas, and hold the lands described in the bill to be public lands of the

United States, subject to entry under the laws thereof relating to the public lands of the Government of the United States.

The plaintiff then proceeds to allege the ground of his claim and pretension, and the principle upon which he seeks relief of the court. He alleges that he is advised and believes that upon the approval and transmission of the said "List No. 5," by the said Teller, as Secretary of the Interior, the title to said lands vested in fee in the State of Oregon and its assignees or grantees, so that thereafter it was not within the power of the then Secretary of the Interior, or of any of his successors in office, or of any officer of the Government of the United States, effectively to revoke such approval, or to revoke or annul the orders, rulings, and determinations made in that behalf by the said Secretary Teller, as such Secretary, or to injuriously affect the rights of the State of Oregon, or of its assignees or grantees, or of the plaintiff, to said lands. And further, that the action of the present Secretary casts a cloud upon the title of the plaintiff to the lands, which he has acquired from and through the State of Oregon.

Upon the case thus made by the bill, and admitted by the demurrer, the appellant, the plaintiff below, has sought to maintain two main propositions: First, that the making, approval, and transmission of the "List No. 5" to the Governor of the State of Oregon, was a *final decision* by the Secretary of the Interior, the effect of which was to vest in the State the title to the lands in question beyond all further control of the Land Department, notwithstanding that no patent had ever been issued to the State by the Land Department, and which title could be divested only by the judgment of a court; and, second, whatever may be the power of the particular Secretary making the original decision as to the character of the lands, and approving and certifying to the Governor of the State the list of such lands, as directed by the statute, that decision was so far final that

it could not be reversed or set aside by any successor in office of the Secretary who rendered the decision in the first instance.

The first of these propositions has been considered and decided by this court in the case of *Warner Valley Stock Co.* v. *Smith,* 9 App. D. C. 187. That case arose under the swamp and overflowed lands act of 1850, and the extension act of 1860, and in which the State of Oregon was the State supposed to have become entitled to the lands there in controversy, by the action of the Land Department of the United States Government. It is conceded by the appellant in this case that the case just referred to does substantially decide the first proposition here presented, though it is thought by counsel that this case is, in some respects, distinguishable from the case reported in 9 App. D. C. We think, however, that, with respect to the first proposition stated, the two cases are without substantial difference. That case was taken by appeal to the Supreme Court of the United States, where, by reason of the resignation from office of Secretary Smith, the case abated. *Warner Valley Stock Co.* v. *Smith,* 165 U. S. 28.

But since that case was so disposed of in the Supreme Court there has been made by that court a decision which would appear to fully embrace and conclude both of the propositions contended for by the appellant in this case, and which would seem to preclude further discussion of the subject. The case in which that decision was made is the case of *Michigan Land and Lumber Co.* v. *Rust,* 168 U. S. 589. That case, like the present, arose under the swamp and overflowed lands act of 1850, Ch. 84; and in that case, as in the present, there had been no patent issued to the State for the lands in controversy; and the principal and leading questions were as to the construction of the act, and the effect of certain proceedings under the act, had and taken by the Secretary of the Interior as the head of the Land Department.

In that case, it was held, in an opinion of the court deliv-

ered by Mr. Justice Brewer, that whenever an act of Congress granting lands specifically provides for the issue of a patent, the legal title remains in the Government until such patent is issued, with power to inquire into the extent and validity of rights claimed against the Government; and although a survey had been made of the lands in controversy which indicated that they were swamp lands, it was still within the power of the Land Office, *at any time prior to the issue of a patent*, to order a resurvey, and to correct any and all mistakes made in the prior survey and report made to the office. The powers and duties of the Secretary of the Interior, as head of the Land Department, are continuing and co-exist with the duration of the legal title to the land in the Government of the United States; and the question as to the particular person who may fill the office of Secretary of the Interior at the time of the action taken that gives rise to the controversy is wholly immaterial. The duty pertains to the office and not to any particular incumbent thereof, as distinguished from his predecessor or successor in office.

In the opinion of the court, in *The Michigan Land and Lumber Co.* v. *Rust*, just referred to, the court said:

"It will be perceived that the act (act of 1850) contemplated the issue of a patent as the means of transferring the legal title. In *Rogers Locomotive Works* v. *American Emigrant Co.*, 164 U. S. 559, 574, it was said, speaking in reference to this matter, and after a full review of the previous authorities, ' when he,' (that is, the Secretary of the Interior) ' made such identification, then, and not before, the State was entitled to a patent, and on such patent the fee simple title vested in the State. The State's title was at the outset an inchoate one, and did not become perfect, as of the date of the act, until a patent was issued.' " And, again, in the course of the opinion, it was said: "And in *New Orleans* v. *Paine*, 147 U. S. 261, the question was presented as to the power of the Department to order a new survey, and on page 266 the rule was thus stated: ' If the Department was

not satisfied with the survey, there was no rule of law standing in the way of its ordering another. Until the matter is closed by final action, the proceedings of an officer of a Department are as much open to review or reversal by himself, *or his successor*, as are the interlocutory decrees of a court open to review upon the final hearing.' So, notwithstanding that a survey had been made, and that such survey indicated that the land in controversy was swamp land, and, therefore, passing under the act of 1850 to the State of Michigan, it was within the power of the Land Department, at any time prior to the issue of a patent, of its own motion, to order a resurvey, and correct by that any mistakes in the prior survey."

In that decision are cited many other decisions maintaining the same principle, and there are many cases in the Land Department to show an established practice there, in accordance with the doctrine so explicitly stated in *The Michigan Land and Lumber Co.* v. *Rust, supra.*

It follows that the decree of the court below must be affirmed; and it is so ordered.            *Decree affirmed.*