**PAN AMERICAN PETROLEUM CORPORATION, a corporation, Plaintiff,**

**v.**

**Ed PIERSON, individually and as Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior, et al., Defendants.**

**Civ. No. 4241.**

United States District Court
D. Wyoming.
March 4, 1960.

A. G. McClintock, Cheyenne, Wyo., Thomas J. Files, Virgil C. McClintock and Frank H. Houck, Casper, Wyo., for plaintiff.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for defendants.

KERR, Judge.

The subject of this controversy involves oil and gas leases heretofore issued on public lands. Some of the leases in question are on producing lands, others on non-producing lands, while others are on lands known to contain valuable deposits of oil and gas.

The matter is before the Court on the government's motion to dismiss.

A summary of the pleadings, statutes and regulations is essential to an understanding of the issues involved.

On January 27, 1959, the State Supervisor for the State of Wyoming, Bureau of Land Management, filed a complaint in the Cheyenne Land Office of the Bureau of Land Management on behalf of the United States as contestant and named the Pan American Petroleum Corporation, together with eighty-five other persons, companies and corporations, as contestees. Omitting the caption the complaint is as follows:

"Comes now the United States of America, acting by and through the State Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior, pursuant to the provisions of Title 43, Code of Federal Regulations, 1954 Revision, Supp., Part 221, and as grounds for contest states and alleges:

"I

"That Walter G. Davis and other parties by plan, scheme and device wilfully, falsely and fraudulently:

"(a) Procured the issuance and assignment of Federal oil and gas leases for the purpose of enabling Walter G. Davis or other parties to fraudulently obtain oil and gas leases for the use, benefit and on behalf of Walter G. Davis or other parties in excess of 15,360 acres contrary to and in violation of the statutes of the United States and the regulations of the Department of the Interior.

"(b) Procured the issuance and assignment of Federal oil and gas leases for the use, benefit and on behalf of Walter G. Davis or other parties without disclosing that an agent or attorney in fact was involved and without the interest and

qualifications of said Walter G. Davis or other parties being disclosed contrary to and in violation of the statutes of the United States and the regulations of the Department of the Interior.

"(c) Procured the issuance and assignment of Federal oil and gas leases for the use, benefit and on behalf of Walter G. Davis at a time when the said Walter G. Davis was not qualified to hold such leases or interests therein contrary to and in violation of the statutes of the United States and the regulations of the Department of the Interior.

"II

"That the serial numbers, the legal description of the land included therein and the parties and their addresses presently having an interest as shown by the records of the Bureau of Land Management in all leases obtained by issuance and assignment contrary to and in violation of the statutes of the United States and the regulations of the Department of the Interior as alleged in Paragraph No. I above are shown on Exhibit A attached hereto and incorporated herein by reference.

"III

"The name and address of each party interested as shown by the records of the Bureau of Land Management and the legal description of the lands involved are shown on Exhibit A attached hereto and incorporated herein by reference.

"IV

"That there are no proceedings pending for the acquisition of title to or an interest in such lands as shown by the records of the Bureau of Land Management other than as noted on said Exhibit A.

"Wherefore, the United States of America requests that it be allowed to prove the allegations contained herein and that all of said leases shown on Exhibit A be invalidated, *cancelled and declared null and void and for such other and further action as may be deemed proper in the circumstances.*

"Notice

"This complaint is filed in the State of Wyoming Land Office, Bureau of Land Management, Room 409, Federal Office Building, Cheyenne, Wyoming and any papers pertaining thereto shall be sent to such office for service on the contestant.

"Unless contestees file an answer to the complaint in such office within thirty (30) days after service of this notice and complaint, the allegations of the complaint will be taken as admitted and the case will be decided without a hearing. Any answer should be filed in accordance with Title 43, Code of Federal Regulations, 1954 Revision, Supp., Part 221." (Emphasis supplied.)

On February 24, 1959, plaintiff filed this action to enjoin the defendants from taking any action against the plaintiff in said departmental proceedings and praying that the proceedings be declared null and void. The complaint alleges inter alia that the only remedy available to the Secretary of the Interior is by proceeding through the Attorney General of the United States in an action instituted in the United States District Court for the district in which the leased property is located or in which the lease owner may be found; that no power or authority exists in the Secretary of the Interior or any of his subordinate officers or agents to proceed administratively to cancel or forfeit any of such leases held by the plaintiff; the complaint further alleges that the administrative proceedings were wholly unauthorized by applicable statutes of the United States and directly violate the plain provisions of the statute.

The defendants interpose a motion to dismiss the complaint on the grounds (a) that no claim for relief has been stated; (b) the Secretary of the Interior is an

indispensable party, and (c) that plaintiff has failed to exhaust its administrative remedies.

Statutes and Regulations Involved.

Section 27 of the Mineral Leasing Act as amended by section 6 of the Act of August 8, 1946 (30 U.S.C.A. § 184) in pertinent parts provides as follows:

" * * * no person, association, or corporation, except as herein provided, shall take or hold at one time oil or gas leases exceeding in the aggregate fifteen thousand three hundred and sixty acres granted hereunder in any one State. * * *. If any interest in any lease is owned, controlled, directly or indirectly, by means of stock or otherwise, in violation of any of the provisions of this Act, the lease may be cancelled, or the interest so owned may be forfeited, or the person so owning or controlling the interest may be compelled to dispose of the interest, in any appropriate proceeding by the Attorney General. *Such a proceeding shall be instituted in the United States district court for the district in which the leased property or some part thereof is located or in which the lease owner may be found * * *.*"

By the Act of August 2, 1954 (68 Stat. 648), the limitation of acreage so provided was increased to 46,080 acres in any one state.

Section 31 of the Mineral Leasing Act, as amended by Section 9 of the Act of August 8, 1946 (30 U.S.C.A. § 188), provides in pertinent parts as follows:

"Except as otherwise herein provided, *any lease* issued under the provisions of this Act *may be forfeited and cancelled by an appropriate proceeding in the United States district court for the district in which the property, or some part thereof, is located* whenever the lessee fails to comply with any provisions of this Act, of the lease, or of the general regulations promulgated under this Act and in force at the date of the lease; * * * *".*

"Any lease issued after August 21, 1935, under the provisions of Section 17 of this Act shall be subject to cancellation by the Secretary of the Interior after thirty days' notice *upon the failure of the lessee to comply with any of the provisions of the lease, unless or until the land covered by any such lease is known to contain valuable deposits of oil or gas.*" (Emphasis supplied.)

The proceedings instituted by the Supervisor were brought under the provisions of Title 43, Code of Federal Regulations, 1954 Revision, Supp., Part 221, which provides in part:

"221.67 Government contests. The Government may initiate contests for any cause affecting the legality or validity of any *entry* or *settlement* or mining *claim.*" Emphasis supplied.)

Subsequent to the institution of this action and on September 21, 1959 (73 Stat. 571), Congress again amended the Mineral Leasing Act of February 25, 1920, and I quote from this amendment:

"If any interest in any lease is owned or controlled, directly or indirectly, by means of stock or otherwise, in violation of any provisions of this Act, the lease may be cancelled, or the interest so owned may be forfeited, or the person so owning or controlling the interest may be compelled to dispose of the interest, in any appropriate proceeding instituted by the Attorney General. *Such a proceeding shall be instituted in the United States district court for the district in which the leased property or some part thereof is located or in which the lease owner may be found,* except that any ownership or interest forbidden by this Act which may be acquired by descent, will, judgment, or decree may be held for two years and not longer after its acquisition." (Emphasis supplied.)

There is now pending before the Congress S. 2983, an amendment to the Mineral Leasing Act, Revision of 1960, from which I quote:

"* * * Provided, however, That if such violation has been alleged in the acquisition or holding of a lease or interest in lands producing oil and gas, or known to contain valuable deposits of oil and gas, no such interest may be canceled or forfeited or otherwise ordered disposed of except by an action beginning in the United States district court for the district in which the land or some part thereof is located or in which such person, association, or corporation may be found, upon appropriate proceedings instituted in such court by the Attorney General. In the event that the Secretary has reason to believe that fraud has been committed in the acquisition or holding of any interest in an oil and gas lease by any person, association, or corporation, he may instead request the Attorney General to institute appropriate proceedings for the cancellation of such interest against such person, association, or corporation. Any such proceeding shall be instituted in the United States district court for the district in which the land or some part thereof is located or in which such person, association, or corporation may be found. The court in any proceedings under this section, in addition to any other penalties provided by law, shall, if fraud is found, provide that such person, association, or corporation, shall be ineligible thereafter either permanently or for a lesser period to acquire any lease or other interest in land under the provisions of this Act.

"Bona Fide Purchaser

"The right of cancellation or forfeiture for violation of the provisions of this Act shall not apply so as to affect adversely the title or interest of a bona fide seller or purchaser in any lease, option for a lease, or interest in a lease acquired in conformity with the acreage limitations of this Act from any other person, association or corporation whose holdings, or the holdings of a predecessor or successor in title, including the original lessee of the United States, may have been canceled or forfeited, or may be subjected to cancellation or forfeiture for any such violation. Any person, association or corporation who is a party to any proceedings with respect to a violation of any provision of this Act shall have the right to be dismissed as such a party upon a sworn statement and such other written proof as the Department might require, showing that the person, association or corporation acquired the interest involving him as such a bona fide purchaser or bona fide seller without violating any provisions of this Act."

Senator O'Mahoney of Wyoming stated on February 4, 1960, with respect to S. 2983:

"* * * (5) To provide that violators may be proceeded against by the Secretary in administrative proceedings but that in the event the Secretary has reason to believe *that fraud has been committed,* he may request the Attorney General to institute proceedings in the U. S. District Court.

"(6) *To authorize the court if fraud is found* to declare the violator ineligible thereafter, either permanently or for a lesser period, to hold any lease or other interest in land under the provisions of this Act." (Emphasis supplied.)

The Congressional intent respecting the 1920 Mineral Leasing Act is clearly manifested in 58 Congressional Record, page 7604, 66th Congress, 1st Session, from which I quote:

"Mr. Anderson: Mr. Chairman, I move to strike out the last word. I want to ask the chairman of the committee a question. The provision

beginning on line 6, page 6, provides:

" 'Any interests held in violation of this act shall be forfeited to the United States by appropriate proceedings instituted by the Attorney General'

And so forth.

"I take it that under that language the holding is valid and any operations conducted under it would be valid until after action brought by the United States. Am I correct in my construction of that language?

"Mr. Sinnott: That would relate to a lease, *but not to a permit.* The Secretary has certain rights under a permit, but after the permit is merged into a lease, *then it will take court action.*

"Mr. Anderson: Well, Mr. Chairman, I want to ask what was the reason for that sort of a provision? Ordinarily a lease would be void ab initio, but here *you put the entire burden on the Government to proceed to forfeit the lease before anything can be done in the way of showing fraud.*

"Mr. Sinnott: It is in recognition of that legal, or equitable, principle that the law abhors a forfeiture, *and there must be a showing made in court before the forfeiture can be secured.*

"Mr. Anderson: I assume a man could scarcely hold a larger amount of land under this act than the act permits, without knowing it. Therefore it seems to me that it ought to provide that the holding of an amount in excess of the amount permitted by the law should be void from the beginning.

"Mr. Sinnott: Well, a man might inadvertently secure more stock than he is entitled to; and it is in line with all court proceedings in relation to forfeiture.

"Mr. Anderson: Mr. Chairman, I move to insert in line 7, page 66, after the word 'be' the words 'void and shall be.' So that it will read:

" 'Any interests held in violation of this act shall be void and shall be forfeited to the United States'."
(Emphasis supplied.)

The Congressional record discloses that the Anderson motion was defeated and the bill was enacted into law requiring court proceedings to be instituted where fraud was found to exist.

I have taken occasion to examine the standard Oil and Gas lease issued by the Secretary of the Interior, Form No. 4–1158, 6th Edition, April 1957, and I quote Section 7 of the terms of the lease:

"Sec. 7. Proceedings in case of default.—If the lessee shall not comply with any of the provisions of the act or the regulations thereunder or of the lease or make default in the performance or observance of any of the terms hereof except payment of rental, and such default shall continue for a period of 30 days after service of written notice thereof by the lessor, this lease may be canceled by the Secretary of the Interior in accordance with section 31 of the act, except that if this lease covers lands known to contain *valuable deposits of oil or gas,* the lease *may be canceled only by judicial proceedings in the manner provided in section 31 of the act*; but this provision shall not be construed to prevent the exercise by the lessor of any legal or equitable remedy which the lessor might otherwise have. Upon cancellation of this lease, any casing, material, or equipment determined by the lessor to be necessary for use in plugging or preserving any well drilled on the leased land shall become the property of the lessor. A waiver of any particular cause of forfeiture shall not prevent the cancellation and forfeiture of this lease for any other cause of forfeiture, or for the same cause occurring at any other time." (Emphasis supplied.)

Title 43, Code of Federal Regulations, Section 192.161(c), provides:

"(c) Leases known to contain valuable deposits of oil or gas may be cancelled *only* by judicial proceedings in the manner provided in sections 27 and 31 of the act." (Emphasis supplied.)

■ Looking at the statute in the light of all that bears upon its purpose and meaning, I think it clearly and unmistakably lays upon the Secretary of the Interior or his subordinates the plain duty to bring an action in the United States district court where the leased lands are situated if he seeks to cancel leases on the ground of fraud if the lands contain valuable deposits of oil or gas. In the case at bar there is no dispute that the lands contain such deposits.

True, there is a wide latitude available to the Secretary of the Interior in many situations, but he is bound by the statute. Lane v. Hoglund, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066.

·Counsel have filed voluminous briefs citing scores of cases, yet none of these cases parallel the facts in the case at bar. I have found no case where the Secretary or his subordinates have attempted to cancel leases administratively where valuable deposits of oil or gas are known. The cases are many where the government has brought suit in the United States district court to cancel leases and patents and no good reason is shown by the Department in this case why deviation should be made from the well-beaten path of the previous procedure.

In the case of Bell Oil & Gas Co. v. Wilbur, Secretary of Interior, 60 App. D.C. 256, 50 F.2d 1070, at page 1071, the Court of Appeals for the District of Columbia in discussing the power of the Secretary of the Interior under the Oil and Gas Leasing Act of 1920 stated:

"It is unnecessary for us to enter into any discussion as to the action of the Secretary, since we are compelled to dispose of the case upon another ground, namely, that the plaintiff has an adequate remedy at law. *The Secretary, under the terms of the act, has no power by his own fiat to cancel these leases. He is required to go into a District Court of the United States to accomplish that result by a proceeding in equity.* In that proceeding, plaintiff can set up as a defense the action of the Secretary in attempting to exact the 15 cents per barrel over and above the market price, and the legality of the Secretary's action would then be for the determination of the court.

"But it is urged that, should the court decide in favor of the Secretary, the only order which it could enter would be to decree the cancellation of the leases, and that plaintiff should not be compelled to thus place his properties in jeopardy. We are not impressed with this contention. *Plaintiff cannot be deprived of its property in the leases except by due process of law,* and a court of equity, having jurisdiction of the proceeding, has jurisdiction to enter a decree which will protect the rights of all parties involved; therefore, should the court decide that the Secretary was right in imposing the 15 cents per barrel over and above the market price, it could still protect the plaintiff by a decree to the effect that, upon the failure of the plaintiff to pay the accumulated amount found to be due the government by a specified date, a decree would be entered canceling the lease." (Emphasis supplied.)

■ From what I have said I hold the Supervisor is proceeding in contravention of the clear mandate of the statute, his own regulation, and in violation of the terms of the lease when he proceeds administratively to cancel leases on lands known to contain valuable oil and gas deposits. This prerogative Congress has reserved for the courts.

■ Turning now to the question as to whether the Secretary of the Interior is an indispensable party to this action.

I am confronted at the threshold with a long line of Supreme Court decisions, as well as a Tenth Circuit decision.

5 U.S.C.A. § 133y, Reorganization Plan of 1946, No. 3, pt. 4, § 403, subsection (e):

"The Bureau of Land Management and its functions shall be administered subject to the direction and control of the Secretary of the Interior, and the functions transferred to the Secretary by subsection (a) of this section shall be performed by the Secretary or, subject to his direction and control, by such officers and agencies of the Department of the Interior as he may designate."

Clearly the Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior, is the arm or alter ego of the Secretary.

In an early decision (1896), Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 227, 41 L.Ed. 621, the Supreme Court held that an action against the Commissioner of the General Land Office was in fact a suit against the Secretary of the Interior. It was there held that the phrase "under the direction of the Secretary of the Interior" was not meaningless but was intended as an expression in general terms of the power of the Secretary to supervise and control the extensive operations of the land department, of which he is head. That it means that in the important matters relating to the sale and disposition of the public domain, issuing patents thereon, and the administration of the trust devolving upon the government, by reason of the laws of Congress respecting the public domain, the Secretary of the Interior is the supervising agent of the government to do justice to all claims and preserve the rights of the people. The court said at page 34, of 165 U.S., at page 228 of 17 S.Ct.:

"The present suit was avowedly brought against Smith as Secretary and Lamoreux as commissioner, for acts done and threatened by them in their official character respectively. The prayer of the bill was for an injunction against both of them from assuming to exercise further jurisdiction with respect to the disposition of the lands in question, and from further trespassing upon the plaintiff's right of quiet possession thereof; and that the defendant Smith be commanded to prepare patents therefor to be issued to the plaintiff, in accordance with law, and to the end that the plaintiff's title might be quieted and freed from cloud, and for further relief.

"The purpose of the bill was to control the action of the secretary of the interior. The principal relief sought was against him, and the relief asked against the commissioner of the General Land Office was only incidental, and by way of restraining him from executing the orders of is official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful would be contrary to settled rules of equity pleading."

In Webster v. Fall, Secretary of the Interior, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411, the court held that an action against the Superintendent of the Indian Agency by a member of the Osage Indian tribe to compel payments was a suit against the Secretary of the Interior and could not be maintained. The court quoting from Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068 stated at page 510, of 266 U.S., at page 149 of 45 S.Ct.:

"'* * * They act under his direction and perform such acts only as he commits to them by the regulations. They are responsible to him and must abide by his direction. What they do is as if done by him. He is the public's real representative in the matter, and, if the injunction were granted, his are the hands which would be tied.' In the Smith case, suit was brought against the Secretary of the Interior and

the Commissioner of the General Land Office to enjoin them from exercising further jurisdiction with respect to the disposition of certain public lands, from further trespassing upon complainant's right of quiet possession, and to command the issue of patents to plaintiff. The suit abated as to the Secretary because of his resignation, and it was held that it could not be continued against the Commissioner alone. We quote from the opinion (pages 34–35 [17 S.Ct. 228]): 'The purpose of the bill was to control the action of the Secretary of the Interior; the principal relief sought was against him, and the relief asked against the Commissioner of the General Land Office was only incidental, and by way of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be *contrary to settled rules of equity pleading.*' "

In Williams v. Fanning, Postmaster of Los Angeles, 332 U.S. 490, at page 493, 68 S.Ct. 188, at page 189, 92 L.Ed. 95, Mr. Justice Douglas stated:

" \* \* \* that the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him."

The case of Sellas v. Kirk, 9 Cir., 200 F.2d 217, involved a suit to enjoin a range manager from effecting a reduction in grazing permits on public lands. The court held that a suit against the range manager was a suit against the Secretary of the Interior and stated at page 220:

"But assuming that the action on appellant's application for a permit is judicially reviewable, we think the Secretary of the Interior is an indispensable party to the suit. The only party defendant before the court is the Secretary's subordinate, and it is the Secretary, not the subordinate, who is authorized by the Act 'to issue or cause to be issued permits to graze livestock' on grazing districts. 43 U.S.C.A. § 315b. The rule declared in the leading case of Williams v. Fanning, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95, is that 'the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him.' "

I am unable to distinguish the case at bar from Richman v. Beck, 10 Cir., 257 F.2d 575. There Judge Phillips, speaking for the court, held that an action against the supervisor of the Bureau of Land Management was an action against the Secretary of the Interior and stated at page 579:

"Counsel for Beck argue that while his prayer for relief sought a mandatory injunction, requiring the issuance of a trailing license or permit, the primary relief sought was a judgment restraining Richman and Giles from interfering with the trailing and grazing rights which he had previously enjoyed. But Beck has no right to trail his sheep in District No. 2, without a permit so to do from the Secretary of the Interior or his subordinates acting for him, nor to graze his sheep in District No. 2 without a permit so to do, issued or caused to be issued by the Secretary of the Interior. To lawfully exercise the rights which he asserts, he must obtain affirmative action by the Secretary of the Interior or by subordinates of the Secretary of the Interior, acting for him.

"And, while the decree below is negative in form, in that it enjoins the withholding of permits, its effect is to affirmatively require the issuance of permits.

566

"We conclude that the Secretary of the Interior was an indispensable party defendant."

An examination of the complaint and the decided cases leads me to the conclusion that the Secretary of the Interior is an indispensable party defendant. An order will be entered dismissing the complaint for lack of an indispensable party.