**RIO HONDO HARVESTING ASSOCIA-
TION, Appellant,**

v.

**Charles E. JOHNSON, Tracy C. Murrell
and Humberto Martinez, Appellees.**

No. 18586.

United States Court of Appeals
Fifth Circuit.

May 12, 1961.

As Amended on Denial of Rehearing
Aug. 3, 1961.

Morris Atlas, Stafford, Atlas & Spilman, McAllen, Tex., for appellant.

Robert C. Maley, Jr., Asst. U. S. Atty., Houston, Tex., Earl Street, Regional Atty., Dept. of Labor, Dallas, Tex., William B. Butler, U. S. Atty., Houston, Tex., for appellees.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from an order of the District Court dismissing a suit brought by the appellant seeking to enjoin the defendants as local representatives of the Secretary of Labor from carrying out an order of the Director of the Bureau of Employment Security of the Department that in effect disqualifies the appellant from continuing to employ Mexican nationals. The principle point sought to be raised by the appellant is the same as that urged before this court in Johnson, appellant, v. Kirkland et al., 5 Cir., 290 F.2d 440. The question is whether the Secretary of Labor has the power under the Migratory Labor Act, 7 U.S.C.A. §§ 1461–1468 to impose a minimum wage scale or a minimum wage fixing schedule for Mexican workers which is determined by schedules other than the current prevailing domestic wage rate for like agricultural work. As we did in that case, we now also in this one, conclude that this point is not reached because we conclude that the District Court correctly dismissed the suit for the nonjoinder of the Director of Bureau of Employment Security, an indispensable party to the litigation. Reference is made to the Johnson and Scannell opinion for a fuller description of the purpose and effect of these provisions of the Migratory Labor Act.

We have a different problem from that presented in the earlier case, because here Mexican laborers were already at work under existing contracts when, pursuant to administrative proceedings, approved by the director, notice was sent to the Texas Employment Commission that appellant's authorizations to contract for Mexican nationals were revoked and the appellant was instructed to return all Mexican nationals then under contract to the reception center. Appellant seeks to attack this action by enjoining the local officials from carrying it out.

The basis on which appellant places its plea is threefold. It argues that the procedures for the conducting of administrative hearings prescribed by the Migrant Labor Agreement were violated and that the findings were thus nullified; it also argues that the prescribed procedures themselves failed to provide a full hearing, and thus denied appellant procedural due process; and finally it urges that the asserted failure of the appellant to keep records as prescribed by appropriate regulations related to an effort by the Department of Labor to maintain a void policy—that is, to establish a minimum wage for migrant workers, which it says is not authorized by the statute.

Of course, if indispensable parties have not been joined in the suit the trial court could not proceed to a consideration of any of these points. We therefore come to a determination of the correctness of the holding by the trial court that the director of the Bureau of Employment Security, a resident of the District of Columbia, was an indispensable party.

From the findings of fact of the trial court, the following appears: On or about July 1, 1959, the beginning of the 1959 harvest season, plaintiff, pursuant to statutory authority and the Standard Work Contract entered into work contracts with Mexican nationals, whereby both sides agreed to be bound by the joint determinations of the representatives of the Governments of the United States and the Republic of Mexico pursuant to Article 30 of the Migrant Labor Agreement of 1951, as amended.

On or about August 1, 1959, an investigation of plaintiff's pay practices was conducted by representatives of the Department of Labor to determine whether the piece-rate paid by plaintiff to the Mexican nationals adversely affected the wages of domestic agricultural workers similarly employed and whether the wages paid such Mexican nationals were in accordance with the prevailing rate as required by Article 15 of the Migrant Labor Agreement and Article 4 of the Standard Work Contract.

An examination of plaintiff's payroll records revealed that, during the payroll periods ending July 16, July 23 and July 30, 1959, plaintiff failed to maintain an accurate record of the hours worked by the Mexican nationals involved, who were engaged in the performance of piece-rate activities for these employment periods. Defendants claim that the deficient records precluded the Department of Labor from determining the wages earned and hours worked by the Mexican nationals and the effect of such earnings on the wages of domestic workers as required by law.

On November 13, 1959, Johnson as representative of the Department of Labor and the Mexican Consul at McAllen, Texas, pursuant to Article 30 of the Migrant Labor Agreement and based upon the investigation, made a joint finding of fact and joint determination that plaintiff had violated Article 19 of the Standard Work Contract by its failure to comply with the record keeping provisions of that article. Plaintiff was advised of this action and of its right to appeal therefrom provided in Article 30.

Upon appeal from the joint finding of fact and joint determination the representatives of both governments at Washington, D. C., namely the Designee of the Secretary of Labor and the Minister Counselor of the Mexican Embassy, executed a final joint determination pursuant to Article 30, dated December 30, 1959, affirming the initial joint determination in all respects. Plaintiff was advised of this final joint determination by registered letter dated January 5, 1960.

On or about January 11, 1960, the Regional Director of the Department of Labor, presently Murrell, initiated proceedings to consider whether plaintiff's existing authorizations to contract for Mexican nationals should be revoked and further ones denied based upon the joint determination of violation of the Standard Work contract and pursuant to Article 7, the Second Part, Section A, of the Migrant Labor Agreement and 20 Code of the Federal Regulations 612, Subpart D.

Upon consideration of the serious nature of the violations found in the joint determination the Regional Director declared in a decision dated February 12, 1960, that plaintiff's existing authorizations to contract for Mexican nationals should be revoked and further ones refused. After being advised of the Regional Director's decision and of its right to appeal therefrom, plaintiff appealed to the Director of the Bureau of Employment Security at Washington, D. C.

Having final authority concerning revocation of authorizations and refusal of further ones under 20 Code of Federal Regulations 612, Subpart D, Sections 612.56, 612.57, and 612.58, the Director affirmed the Regional Director's prior decision in all respects on March 27, 1960. In accordance with the Director's decision and the instructions contained therein, the Regional Director notified plaintiff and the Texas Employment Commission that plaintiff's existing authorizations were revoked and that no authorizations to contract for Mexican nationals should be issued to plaintiff until further notice. Plaintiff was instructed to return all of the workers presently employed to the reception center at Hidalgo, Texas, though this action has been delayed pending a hearing upon the temporary injunction in this case.

On the record facts on which the parties stipulated the case should be tried on the merits, we think it clear that the plaintiff cannot obtain the relief it seeks by enjoining the named defendants from "placing the name of the Plaintiff upon the list of employers ineligible to contract Mexican nationals and from returning Mexican Nationals now employed by the plaintiff to the reception center for termination of contract and return to Mexico," which is the relief prayed for. This would not give it any relief because the plaintiff has already been placed on the list of employers ineligible to contract Mexican nationals and it has already been instructed to return the Mexican nationals to the reception center at Hidalgo.

Thus, whatever may be the difference in legal consequences, we think it must be clear that *affirmative* action must be taken by someone to undo the harm which plaintiff claims it has suffered. Some official must recertify the plaintiff or reestablish its status with the Texas Employment Commission before plaintiff can be permitted to contract for Mexican nationals.

The significance of this fact is seen when we test the claim of the defendant that the suit must be dismissed for the want of an indispensable party—the Director of the Bureau of Employment Security of the Department of Labor.

Although the courts are not in full agreement as to when a superior officer is an indispensable party when an effort is made to enjoin his subordinates from carrying out policies or directions of the superior, all parties here are agreed that the Supreme Court has made a definitive test in Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95. The Court discussed the several cases: American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621; Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068, and Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. The Court then said:

> "These cases evolved the principle that the superior officer is an indispensable party if the decree granting the relief sought will require him *to take action*, either by exercising directly a power lodged in him *or by having a subordinate exercise it for him.*" (Emphasis added.) 332 U.S. 490, 68 S.Ct. 189.

In a recently decided case touching on another phase of this same Mexican worker program, we said:

> "This means that the problem (of indispensability of a party) must be tested in terms of the result if, under the particular setting, the superior—not a party and hence under no coercive court order—sits tight and does absolutely nothing." Johnson et al. v. Kirkland et al., 5 Cir., 290 F.2d 440.

Here, the plaintiff gets no relief unless action previously taken is revoked. The government argues that this action can be taken only by the Director, since he is the official who finally approved the joint decision of the Regional Director and the Mexican official to "disqualify" the plaintiff. Plaintiff argues that it is only the local officers, who are defendants in this suit, who can take this action, because under the Department of Labor regulations only they can initiate the revocation of a certification under Article 7(a) of the employment contract. Plaintiff points out that this power is delegated to the Regional Director under 20 Code of Federal Regulations, 612, et seq.

We think it unnecessary to decide which of these officials has at the moment the initial authority to act, for either it is the Director, or it is the Regional Director acting under his delegaton of authority. Whatever power the local official has, it is because he has been authorized to do it by the Director. In thus acting, the Regional Director is exercising a power *for* the Director. Wherever such a decree requires the taking of action by the superior "either by exercising a power lodged in him or by having a subordinate exercise it for him," we find the Supreme Court in Williams v. Fanning, supra, held the superior is an indispensable party.

The plaintiff seeks to argue the merits of the contention that the alleged failure to keep records was an improper basis for the adverse action taken by the Regional Director because the record-keeping was part of an effort enforced by the Director to establish a minimum wage.[1] Plaintiff asserts that this policy is unauthorized by the Act and that the defendants' efforts to enforce it are illegal acts which may be enjoined as being unauthorized by law. Plaintiff seems to say that we should decide this question and thus having decided it favorably to plaintiff, we could then conclude that the Director was not an indispensable party. The difficulty with this position is that before any official subordinate to the Director may be required to take affirmative action in a matter committed to the Director, the Director is

the person entitled to be heard on this very question.

The same weakness infects the plaintiff's insistence that the hearings that were had under the regulations failed to comply with the regulations and the regulations themselves failed to afford it procedural due process. If the plaintiff seeks affirmative action from the Director or from his subordinate as to a delegated duty, no matter what grounds were asserted as a basis for the desired action, the Director's presence as a party to that contest is indispensable.

The judgment dismissing this complaint is

Affirmed.

### On Petition for Rehearing

PER CURIAM.

It appearing that in the opinion of the Court affirming the judgment of the trial court, entered on May 12, 1961, the Court inadvertently referred to the Bureau of Employment Security as being a bureau of the Department of Agriculture, the said opinion is hereby amended by striking the words "Department of Agriculture" wherever they appear and substituting the words "Department of Labor" therefor.

The motion for rehearing is hereby denied.

---

[1]. A full discussion of this argument is contained in the recently decided case of Johnson et al. v. Kirkland et al., supra. In that case where a direct attack was made on this alleged "minimum wage policy" we held that the Secretary of Agriculture was an indispensable party.